[No. B074441. Second Dist., Div. Four. Sept. 20, 1994.]

ANTHONY R. SAPIANO, Plaintiff and Respondent, v.
WILLIAMSBURG NATIONAL INSURANCE COMPANY, Defendant
and Appellant.

## COUNSEL

Spray, Gould & Bowers, Wallace, Grantham & Schwartz, George M. Wallace and Lea H. Grantham for Defendant and Appellant.

Curtis L. Gemmil and Jerry L. Rowley for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), J.**—This declaratory relief action construes a subrogation clause in a commercial vehicle insurance policy. The trial court held the insurer cannot assert its contractual right to repayment from the insured's recovery against the third party tortfeasor, because the total amount available from the insurance and the third party is insufficient to compensate the full loss suffered by the insured. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts were stipulated below. Plaintiff and respondent Anthony R. Sapiano is the insured under a vehicle insurance policy issued by defendant and appellant Williamsburg National Insurance Company. The policy provided extended collision coverage on Sapiano's 1975 Peterbilt truck and trailer combination in the stated amount of $15,000, minus a $500 deductible. On January 10, 1989, Sapiano's vehicle was "totalled" in a collision with an automobile negligently stopped on the freeway by one Gamaliel Valdepena. Just prior to the collision Sapiano's vehicle was worth more than $20,000; it had been purchased for $25,000.

On February 13, 1989, Williamsburg paid Sapiano $14,500 for the property damage to his vehicle, which was the maximum policy coverage of $15,000 minus the $500 deductible.

Section V-A-5 of the policy provides: "Transfer of Rights of Recovery Against Others to Us: If any person or organization to or for whom we make

payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after 'accident' or 'loss' to impair them."

On December 22, 1989, Sapiano filed an action against Valdepena and others for personal injuries and property damage. Valdepena had insurance with liability limits of $15,000 per person, $30,000 per occurrence, and $10,000 property damage. Valdepena settled Sapiano's personal injury claim for $15,000. Valdepena was willing to settle Sapiano's property damage claim for $10,000.

A dispute arose as to the interests of Sapiano and Williamsburg in the $10,000 available from Valdepena's insurance for property damage. Sapiano contended that Williamsburg's subrogation rights were subordinate until Sapiano was fully compensated for his property loss exceeding $20,000. Williamsburg asserted that it had the right to the whole $10,000 pursuant to the transfer of rights clause in Sapiano's insurance policy. Williamsburg would not waive its subrogation rights to facilitate the proposed settlement of the property damage claim.

This action for declaratory relief followed. The trial court ruled in Sapiano's favor, concluding that Williamsburg must relinquish any claim to the Valdepena payment until Sapiano is fully compensated for the fair market value of his vehicle. The judgment recites that "The fair market value of the insured vehicle in question exceeded the total amount paid by defendant Williamsburg and the amount tendered by or on behalf of Mr. Valdepena . . . . [¶] [D]efendant Williamsburg has no right to assert its contractual repayment provisions unless and until its insured, Plaintiff Sapiano, is fully compensated for all property damage incurred from the loss of his insured vehicle. [¶] . . . Plaintiff Sapiano has priority to collect and retain any proceeds received from any third party as payment for said property damage and any conflicting claim by defendant is unenforceable."

## DISCUSSION

■ "The general rule is that an insurer that pays a portion of the debt owed to the insured is not entitled to subrogation for that portion of the debt until the debt is fully discharged. In other words, the entire debt must be paid. Until the creditor has been made whole for its loss, the subrogee may not enforce its claim based on its rights of subrogation." (2 Cal. Insurance Law & Practice (1988 rev.) § 35.11[4][b], p. 35-47, fns. omitted; *Chase* v. *National Indemnity Co.* (1954) 129 Cal.App.2d 853, 861 [278 P.2d 68]; see

*Finnell* v. *Goodman & Co. Bank* (1909) 156 Cal. 18, 24 [103 P. 483]; *Conservatorship of Edwards* (1988) 198 Cal.App.3d 1176, 1183 [244 Cal.Rptr. 330].)

This established California rule is consistent with the treatises. Discussing automobile collision insurance specifically, Couch states, "Where a collision insurer settles with the insured and the latter recovers from the wrongdoer in an action of which the insurer has knowledge but in which it does not participate, the insured is not entitled to receive more than indemnity for his loss, but if the total amount received does not exceed his actual loss he may retain the full amount so received, and the insurer is not entitled to any return." (16 Couch, Insurance (2d ed. 1983) § 61:241, p. 300, fn. omitted.) Appleman states, "But where the loss was greater than the insurance, and the insured settled with the wrongdoer for damages which, when added to the insurance, were less than the loss, the insurer could recover nothing from the insured." (6A Appleman, Insurance Law and Practice (1972) § 4094, p. 265, fn. omitted; *id.*, § 4095, p. 275.) Keeton states that the rule reimbursing the insured first "has the greatest support . . . among the more recent judicial precedents. The application of this rule maximizes the prospect of 'making the insured whole,' which is consonant with the equitable origins of the subrogation doctrine." (Keeton & Widiss, Insurance Law (Practitioner's ed. 1988) § 3.10, p. 236.)

Under the California Uninsured Motorist Law (Ins. Code, § 11580.2, subds. (a)(1), (g)), it is well settled that an insurer that has paid uninsured motorist benefits is not entitled to be reimbursed by a concurrent tortfeasor until the injured insured has been completely made whole. (Eisler, Cal. Uninsured Motorist Law (4th ed. 1989 rev.) § 17.10, p. 17-5; *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227, 231-232 [107 Cal.Rptr. 439]; *United Pacific-Reliance Ins. Companies* v. *Kelly* (1983) 140 Cal.App.3d 72, 77 [189 Cal.Rptr. 323].)

Williamsburg attempts to avoid all this authority by arguing that this rule is peculiar to the uninsured motorist law or applies only to *equitable* subrogation which arises solely by operation of law in the absence of contract.[1] Williamsburg argues that well-developed rules interpreting subrogation in light of its equitable origins should be ignored, and that the contractual language of its insurance policy, according to its terms, gives Williamsburg a priority in the proceeds available from Valdepena without regard to whether Sapiano is first made whole. Neither contention is persuasive.

[1]"Legal" or "equitable" subrogation has its source in equity and arises by operation of law. "Conventional" subrogation arises by contract of the parties. (*Century Indemnity Co.* v. *London Underwriters* (1993) 12 Cal.App.4th 1701, 1708, fn. 6 [16 Cal.Rptr.2d 393].)

In *Chase* v. *National Indemnity Co., supra,* 129 Cal.App.2d at pages 861-862, the court stated, " 'It is a general rule, applicable to actions based on the ground of subrogation, that such right does not exist, unless the whole debt involved has been paid. . . . This rule applies to conventional as well as legal subrogation, unless the contract by which such right is created provides otherwise.' " Although insurers may place subrogation clauses in their policies (Ins. Code, § 2071; *Century Indemnity Co.* v. *London Underwriters, supra,* 12 Cal.App.4th at p. 1708), those provisions typically are general and add nothing to the rights of subrogation arising by law. (See *Offer* v. *Superior Court* (1924) 194 Cal. 114, 118 [228 P. 11] [right of subrogation arises independent of a provision of insurance contract giving insurer right to recover damages against wrongdoer]; *Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 96-97 [77 P.2d 1084] [language of assignment could add nothing if assignee was not equitably entitled to subrogation]; 2 Cal. Insurance Law & Practice, *supra,* § 35.11[2], pp. 35-43 to 35-44 [typical policy provisions are not usually determinative, and interpretation will depend on equitable principles].)

We assume, as contended by Williamsburg, that the parties *could, explicitly,* provide in their contract that the insurer has a priority regardless whether the insured is first made whole. (*Samura* v. *Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1289 [22 Cal.Rptr.2d 20].)[2]

The instant clause does not do so. It provides only in *general terms* that the rights to recover damages from another "are transferred to us." Although it substitutes plain language ("transferred") for legalistic jargon ("subrogated"), it is no more specific or explicit than language used in older policies stating that the insurer "shall be subrogated" to the insured's rights against another. The clause does not *specifically* address the issue in this case. This general language contrasts with that in *Samura* v. *Kaiser Foundation Health Plan, Inc., supra,* 17 Cal.App.4th at page 1289. There, the provision of the plan *explicitly* provided: " 'Health Plan (or its designee) shall be entitled to the payment, reimbursement, and subrogation as provided in this Section C(1) *regardless of whether the total amount of the recovery of the Member* (or his or her estate, parent or legal guardian) *on account of the injury or illness is less than the actual loss suffered by the Member* (or his or her estate, parent or legal guardian).' " (Italics added.) Here, Williamsburg did not follow Kaiser's example of drafting a contractual provision clearly

---

[2]Keeton says that the justification for applying the general rule in the absence of contract "is fortified by the fact that ordinarily there is no barrier to the use of explicit subrogation terms that provide either for proration or for a disposition of recoveries from third persons that is even more favorable to the insurer's interests." (Keeton & Widiss, Insurance Law, *supra,* § 3.10, p. 236.)

and specifically giving the insurer a priority out of proceeds from the tortfeasor regardless whether the insured was first made whole.

Finally, Williamsburg misplaces reliance on *Travelers Indem. Co.* v. *Ingebretsen* (1974) 38 Cal.App.3d 858 [113 Cal.Rptr. 679], the only authority cited by Williamsburg in which an insurer was held to be subrogated to the recovery against the wrongdoer without regard to whether the insured was first made whole. That case is distinguishable in two ways. First, the insured and the insurer executed a detailed subrogation agreement, after the loss and at the time the insurer paid the insured, which was broader in its language than the clause in Williamsburg's insurance policy. The agreement in *Travelers* stated that " 'In consideration of and to the extent of said payment the undersigned hereby assigns and transfers to the said Company all rights, claims, demands and interest which the undersigned may have against any party through the occurrence of such loss . . . .' " (*Id.* at pp. 865-866.) Second, the decision in *Travelers* emphasized that the insurer's attorneys assisted the insured's attorneys in the litigation against the third party and the insurer bore a portion of the expenses of that litigation. (*Id.* at pp. 866-867 & fn. 7.) *Travelers* applied the rule stated in 16 Couch on Insurance, *supra*, section 61:43, page 125, that "If an insurer paying a claim for a loss caused through the negligence of a third person requests that the insured prosecute his claim against the tortfeasor, assists in the prosecution of the claim, and bears its share of the burden of preparing the case for trial, it is entitled, out of the judgment recovered, to the amount which it has paid on account of the loss, notwithstanding the judgment recovered is not, according to the insured's claim, equal to the full value of the property destroyed. [Fn. omitted.]"

The facts are different here. As noted by the trial court, here Williamsburg sat back without assisting while Sapiano prosecuted the suit against Valdepena, then, after Sapiano negotiated a proposed settlement, demanded all the proceeds for itself.

DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied October 14, 1994.