[No. B158573. Second Dist., Div. Seven. Feb. 24, 2004.]

AMERICAN CONTRACTORS INDEMNITY CO., et al., Plaintiffs and Appellants, v.
MARK J. SALADINO, as Administrator, etc. Defendant and Respondent.

## COUNSEL

Lanak & Hanna, Francis J. Lanak and William J. Allard for Plaintiffs and Appellants.

Lloyd W. Pellman, County Counsel, and David F. Skjeie, Principal Deputy County Counsel, for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—Sureties appeal from an order denying their motion to place an equitable lien on funds turned over to the public administrator of a decedent's estate by the previous defalcating administrator. The sureties claimed a right of subrogation to the estate's interest in the funds because the

sureties had been found liable on fiduciary bonds issued to the former administrator, and had paid the estate on their bonds. The trial court found the sureties' request to impress a lien on the funds premature because the estate had not yet been made whole. We affirm.

## FACTS AND PROCEEDINGS BELOW

Donald Gilbert died in May 1996. Lillian Miller was appointed special administrator of the estate of Donald Gilbert in June and received general letters of administration in October 1996. Miller filed with the court a bond in the amount of $175,000 from appellant American Bankers Insurance Company of Florida in support of her special letters of administration and an additional bond in the amount of $350,000 from appellant American Contractors Indemnity Company in support of her general letters of administration.

In June 1998, the court suspended Miller's powers and appointed respondent, Mark J. Saladino, a public administrator of Los Angeles County, as successor administrator of the decedent's estate.

In July 1998 the court ordered Miller to file an accounting for the estate. She failed to do so. In December 1998 Miller's counsel filed a first and final account and report of the administrator with the court on her behalf. The public administrator and certain heirs filed objections to the first and final accounting.

The public administrator requested the court to enter a surcharge order against Miller. Miller had withdrawn $64,310 from the estate's account at Bank of America. Miller had also sold estate stock holdings and had withdrawn $300,000 from the estate's Merrill, Lynch account. Because the public administrator had not been able to recover or locate the funds, and because Miller had demonstrated bad faith by ignoring a court order to turn over the funds, the public administrator requested Miller be surcharged in double damages[1] and be liable for interest on these amounts at the statutory rate of 10 percent.[2]

In addition, the public administrator challenged over $18,000 worth of disbursements as having no apparent benefit to the estate. By way of example, the public administrator pointed out the administrator had used estate funds to pay thousands of dollars to attorneys and accountants, yet the estate had yet to file a tax return or file an accounting. There were also payments claimed to have been made for utilities for the decedent's town-house, yet the administrator had collected no rental payments from which to

---

[1] Former Probate Code section 9869, now section 859.

[2] Probate Code sections 9601, 9602, 9603.

offset the utility charges. Thus, the public administrator argued Miller should be chargeable for uncollected rents and lost interest on those uncollected rents, because during her administration Miller had taken no steps to either sell or rent the decedent's townhouse.

Prior to trial, and after a court-ordered mediation, the public administrator, the other objectors and the sureties reached an agreement to settle the matter. On September 1, 2000, the court entered its "Order Settling But Disapproving First and Final Account and Report of Former Administrator, Surcharging Former Administrator, Determining Surety Liability on Bonds, Providing for Surety Exoneration After Payment of Liability, and Deferring Allowance on Statutory Commissions and Fees." The court's order surcharged the former administrator a total of $837,525 based on the following findings: (1) Miller had taken estate assets worth $364,310; (2) Miller was liable on this amount for simple interest at 10 percent then in the amount of $74,700; (3) Miller's taking was in bad faith, which made her liable for double damages in the amount of $728,620; (4) Miller was liable for lost rent of $17,280 and interest on this lost rent of $3,456; and (5) Miller was liable for inappropriate disbursements from estate assets of $13,500.

The court's order also incorporated the terms of the contemporaneous stipulation agreed to by the sureties, the public administrator and the other objectors. In a joint trial statement prepared for the hearing on Miller's first and final account and objections, the parties explained the stipulation regarding the sureties' liability as follows: "[The] mediation resulted in an agreement that the sureties would not resist a surcharge of Miller in exchange for a stipulation that their combined liability to the estate would be $425,000, no more and no less. The sureties also wish to obtain orders through this proceeding determining their liability to the estate and Miller's liability to the sureties. Neither the Public Administrator, nor the beneficiaries object to such orders." The joint trial statement also noted the sureties would not be liable jointly and severally with Miller for the double damages imposed "due to their at least partially punitive purpose."

Thus, in accordance with the parties' agreement, the court's surcharge order also (1) found Miller and the sureties jointly and severally liable in the amount of $425,000 (i.e., $100,000 less than the $525,000 combined face value of the bonds); [3] (2) declared the sureties' bonds exonerated upon proof of payment of this sum; and (3) authorized the clerk of the court to enter judgment in favor of the sureties and against Miller in the sum of $425,000 upon proof the sureties had paid this sum to the estate. A separate order

---

[3] Ordinarily, sureties have continuing liability commensurate with their principal's obligation, or to the stated limit of their bonds. (Civ. Code, §§ 2808–2809; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003) ¶ 6:3491, p. 61-78.)

incorporating these stipulated terms regarding the sureties' rights and liabilities was signed and filed on the same date as the court's overall surcharge order.

The sureties paid the estate $425,000 on their fiduciary bonds and the public administrator of the estate acknowledged receipt of the funds. Thereafter the sureties sought and received a judgment against Miller for $425,000 as contemplated in the parties' stipulation and the court's surcharge order.

Sometime thereafter Miller sent the public administrator $267,269.02. The sureties filed a motion requesting an equitable lien and a constructive trust be placed on those funds and sought a "turnover order." In their motion, the sureties argued they had paid in full the only "judgment" imposing joint and several liability against them and Miller. The sureties thus claimed they had statutory rights of reimbursement coextensive with the estate's rights against Miller because they had paid the $425,000 joint and several "judgment" in full. For these reasons the sureties claimed they were entitled to impress a lien on the funds.

The public administrator opposed the sureties' motion. The administrator argued the sureties had no right of subrogation because the estate had not yet been made whole. The public administrator also disputed the sureties' underlying premise the separate order incorporating the terms of the settlement agreement addressing the sureties' interests was a separate and independent judgment—as opposed to just a part of the court's overall surcharge order. Because the court's overall surcharge order remained unsatisfied even with the additional payment, the public administrator argued the sureties' right of subrogation had not yet accrued.

The court denied the sureties' motion. This appeal followed.

## DISCUSSION

### I.  STANDARD OF REVIEW.

The material facts are undisputed. The issues raised in this appeal concern the proper characterization of those facts as well as the controlling legal principles in light of those facts. Accordingly, our review is de novo.[4]

---

[4] See, e.g., *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278] ("If . . . the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently.").

## II. GENERAL PRINCIPLES REGARDING A SURETY'S RIGHT OF SUBROGATION.

"A surety is 'one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefore.' (Civ. Code, § 2787.) A surety bond is a ' "written instrument executed by the principal and surety in which the surety agrees to answer for the debt, default, or miscarriage of the principal." ' (*Butterfield v. Northwestern National Ins. Co.* (1980) 100 Cal.App.3d 974, 978 [161 Cal.Rptr. 280].) In suretyship, the risk of loss remains with the principal, while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults. (*Schmitt v. Insurance Co. of North America* (1991) 230 Cal.App.3d 245, 257 [281 Cal.Rptr. 261].) In the absence of default, the surety has no obligation. (*Ibid.*)"[5]

"Payment of a principal's debt by a surety is the prototypical situation in which the equitable right to subrogation arises. 'Subrogation is the right to recover from the *debtor-obligor*. A surety, e.g., pays the principal debtor's obligation to the creditor, and in equity is substituted for the creditor, or *subrogated* to his rights against the debtor.' (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 169, p. 848, italics in original.)

"The prerequisites to the assertion of a right of subrogation are these: ' "(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others." ' (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 704 [144 Cal.Rptr. 751, 576 P.2d 466]; see also, *Grant v. de Otte* (1954) 122 Cal.App.2d 724, 728 [265 P.2d 952]; 11 Witkin, Summary of Cal. Law, *supra*, § 169, at p. 849.)"[6]

In this case the parties dispute whether the sureties' payment on their bonds in accordance with the settlement agreement and court's surcharge order has satisfied the fourth element of requiring the entire debt to have been paid before a right of subrogation arises. The answer to this question turns on the proper characterization of the court's orders in this case and the proper application of the controlling statutes.

---

[5] *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 38 [86 Cal.Rptr.2d 855, 980 P.2d 407].

[6] *Golden Eagle Ins. Co. v. First Nationwide Financial Corp.* (1994) 26 Cal.App.4th 160, 169 [31 Cal.Rptr.2d 815].

III. *THE COURT'S SURCHARGE ORDER WAS THE ONLY JUDGMENT IN THIS CASE, OF WHICH THE ORDER REGARDING THE SURETIES' RIGHTS AND OBLIGATIONS WAS MERELY A PART; BECAUSE THE SURCHARGE ORDER WAS NOT FULLY SATISFIED THE SURETIES' CLAIMED RIGHT OF SUBROGATION WAS PREMATURE.*

Under the parties' settlement agreement the sureties agreed to having a surcharge order entered against them and Miller jointly and severally in favor of the estate for $425,000. The parties presented the agreed terms of their settlement to the court in the form of a joint trial statement which discussed those matters agreed to and those remaining to be resolved. The court ultimately signed and filed two documents in the case. The first document was the overall surcharge order which incorporated the terms of the settlement agreement with the sureties. The second document was an order limited to the sureties' rights and liabilities under the court's order and the parties' settlement agreement. The second order thus reiterated the terms of (1) a maximum combined exposure of $425,000 on their bonds; (2) exoneration of the bonds on proof of payment; and (3) authorizing the clerk of the court to issue the sureties a judgment against Miller for $425,000 on proof of payment by the sureties on their fiduciary bonds.

The sureties characterize this second document as a separate and independent "judgment" distinct from the court's overall surcharge order. The sureties claim because they have fully paid the only order imposing joint and several liability against them they may now invoke their implied-in-law subrogation rights for this portion of their principal's obligation.[7] The sureties assert their statutory rights of reimbursement from their principal are doubly strong because they took the step of securing a judgment against Miller after satisfying the conditions set forth in the court's separate and independent "judgment" regarding their rights and liabilities.[8] Accordingly, the sureties

---

[7] *Cates Construction, Inc. v. Talbot Partners, supra,* 21 Cal.4th 28, 48, footnote 12 ("Although sureties have a right of reimbursement implied by law (see Civ. Code, §§ 2847, 2848), they frequently execute written contracts of indemnification with their principals . . . ."). The sureties claim these statutory provisions provide a right of reimbursement commensurate with the creditor's rights even for partial payments.

Civil Code section 2847 provides: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section."

Civil Code section 2848 provides: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended . . . ."

[8] The sureties rely on the following statutes in claiming independent rights as judgment debtors:

argue the trial court erred in concluding their right of subrogation had not yet accrued.

It is undisputed sureties have a right of reimbursement implied in law.[9] The issue is instead whether the court issued only one judgment of which the rights and liabilities of the sureties was only a part, or whether the separate order delineating the settlement terms regarding the sureties rights and joint and several liability was a separate "judgment" which they satisfied in full by paying the estate $425,000, thus giving rise to a right of subrogation.

In our view of the record there is only one judgment—the court's overall surcharge order. This order established Miller's liability to the estate. It also established the sureties' liability to the estate on their bonds. It set forth the sureties' rights and remedies once they had paid the estate the agreed amount on their bonds. In other words, the section incorporating the terms of the sureties' settlement agreement imposing joint and several liability against them and Miller and ensuring their rights to exoneration of the bonds and to a judgment against Miller upon proof of payment constituted a significant portion of the court's surcharge order.

The second document merely repeated the sureties' rights and obligations as reflected in the court's overall surcharge order. Significantly, both documents were signed and filed on the same date. It appears the reason for the separate document concerning only the sureties' rights and liabilities was simply for ease of administration for the clerk of the court. After the sureties paid on their bonds and sought a judgment against Miller the clerk did not have to sort through the lengthy surcharge order addressing the other matters of the estate in order to determine whether the court's preconditions for issuing the judgment had been met. In short, we find the assertion the sureties had a separate and independent judgment which their payment satisfied lacks merit.

---

Code of Civil Procedure section 882 discusses the situation where two or more persons are liable on a money judgment, but does not address the separate issue of apportionment. As relevant to this appeal, this section provides: "(b) If the judgment is based upon an obligation of one judgment debtor as surety for another and the surety satisfies the judgment or any part thereof, whether voluntarily or through enforcement procedures, the surety may compel repayment from the principal."

Code of Civil Procedure section 883 provides in relevant part: "(b) The order determining liability for contribution or repayment entitles the judgment debtor to the benefit of the judgment to enforce the liability, including every remedy that the judgment creditor has against the persons liable, to the extent of the liability."

[9] *Cates Construction, Inc. v. Talbot Partners, supra,* 21 Cal.4th 28, 48, footnote 12.

■ Nor does partial payment of the overall judgment give the sureties an immediate right as judgment debtors to place a lien on the monies delivered to the estate by Miller before the estate is made whole. Nothing in the language of the applicable statutes on which they rely gives a surety's interests in reimbursement for partial payment precedence over the original creditor's unsatisfied claim. Moreover, the sureties provide no independent authority for such a proposition and we have found none. Instead, in analogous contexts courts have rejected insurers' claims of priority unless the statute expressly, clearly and unambiguously altered the common law requirement of full payment to the original creditor as a prerequisite to subrogation rights.[10]

■ The common law precondition of payment in full applies equally to cases for implied in law reimbursement rights as it does to cases for contractual subrogation[11]—again, absent clear and express language to the contrary in the contract.[12] Absent clear and express statutory or contractual language to the contrary, the " 'general rule is that an insurer that pays a portion of the debt owed to the insured is not entitled to subrogation for that portion of the debt until the debt is fully discharged. In other words, the entire debt must be paid. Until the creditor has been made whole for its loss, the subrogee may not enforce its claim based on its rights of subrogation.' (2 Cal. Insurance Law & Practice (1988) rev.) § 35.11[4][b], p. 35-47, fns. omitted; *Chase v. National Indemnity Co.* (1954) 129 Cal.App.2d 853, 861 [278 P.2d 68]; see *Finnell v. Goodman & Co. Bank* (1909) 156 Cal. 18, 24 [103 P. 483]; *Conservatorship of Edwards* (1988) 198 Cal.App.3d 1176, 1183 [244 Cal.Rptr. 330].)"[13]

The reason a right of subrogation is "premised on 'total satisfaction' of the underlying obligation, [is] in order to keep the recovery rights of the surety from conflicting with the obligee's rights to eventually obtain full performance of the original, underlying obligation."[14]

---

[10] See, e.g., *Security Nat. Ins. Co. v. Hand* (1973) 31 Cal.App.3d 227, 232–233 [107 Cal.Rptr. 439] (unless the statutory language is "conspicuous, plain and clear," common law equity principles prohibit a carrier from recovering payments made to its insured from a third party tortfeasor if the insured has not yet been made whole); *Sapiano v. Williamsburg Nat. Ins. Co.* (1994) 28 Cal.App.4th 533 [33 Cal.Rptr.2d 659] (same); compare, *Gapusan v. Jay* (1998) 66 Cal.App.4th 734 [78 Cal.Rptr.2d 250] (Labor Code provisions expressly provided the employer reimbursement rights from funds secured from the tortfeasor senior to those of the injured employee).

[11] *Sapiano v. Williamsburg Nat. Ins. Co., supra,* 28 Cal.App.4th 533.

[12] See *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1289 [22 Cal.Rptr.2d 20] (contract provision expressly gave the insurer priority to the proceeds from the tortfeasor without regard to whether the insured was first made whole).

[13] *Sapiano v. Williamsburg Nat. Ins. Co., supra,* 28 Cal.App.4th 533, 536–537.

[14] 16 Couch on Insurance (3d ed. 2000) § 225:255, p. 225–210, footnote omitted.

Because the sureties' payment on their bonds only satisfied their part of the overall judgment, the sureties' underlying premise the judgment imposed against them has been paid in full fails. Accordingly, their right to claim reimbursement was if anything premature.

### IV. THE PRIOR ADMINISTRATOR WAS AUTHORIZED TO DIRECT THE FUNDS BE APPLIED TOWARD THE PART OF THE JUDGMENT FOR WHICH SHE WAS SOLELY LIABLE.

The sureties argue the money Miller gave to the estate was the same money she had stolen from the estate and for which the sureties had paid the estate on their bonds. The sureties thus argue because they already paid the estate for these same stolen funds they are entitled to a constructive trust on the funds in the hands of the public administrator.

The problem with the sureties' argument is no evidence in the record supports their assertion regarding the source of Miller's funds. Thus, this is not the proper case to decide whether tracing a source of funds is a policy which does or should apply in the context of sureties seeking subrogation rights before the original creditor has been paid in full.[15]

(3)   As we see it, this is a case in which the surety is only liable for a portion of its principal's obligation. The sureties are apparently not liable for the amount imposed as double damages because of their punitive purpose. Also, because the parties agreed the sureties' combined liability on their bonds would not exceed $425,000, they are not liable for lost rental income and/or accruing interest on the lost rental income and stolen funds which exceed this amount. In this factual scenario—where the surety is only liable for a portion of the obligation—the principal debtor is entitled to designate how the debtor's payments to the original creditor should be applied.

In this case, Miller did not give the funds to the sureties as reimbursement for the monies they paid on their fiduciary bonds. Instead, Miller gave the funds to the public administrator. Her actions indicate she wanted the funds to be applied to the outstanding balance of her obligation to the estate as a result of the judgment rendered against her by the court's surcharge order.

---

[15] Compare, *California Ins. Guarantee Assoc. v. Superior Court* (1998) 64 Cal.App.4th 219 [75 Cal.Rptr.2d 461], (holding to the extent the insurance guarantee corporation paid covered claims with assets of the insolvent's insurer's estate, the estate was entitled to the proceeds of any subrogation actions regarding those claims).

Civil Code section 2822, subdivision (a) authorizes this treatment of the funds. This section provides: "The acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of a surety thereof, in the same measure as that of the principal, but does not otherwise affect it. However, *if the surety is liable upon only a portion of an obligation and the principal provides partial satisfaction of the obligation, the principal may designate the portion of the obligation that is to be satisfied.*"[16] Thus Miller was entitled to designate her payment go to the estate in partial satisfaction of the portion of the judgment entered against her solely under the authority of Civil Code section 2822.

■ Our interpretation of Civil Code section 2822, subdivision (a) is consistent with the only other published authority on the meaning and application of the statute.[17] A noted authority on California insurance law described the operation of this subdivision as follows: "A debtor may designate what portion of the debt is to be credited with any payment made. *A surety has no right to compel the debtor's payment to be credited to the portion on which the surety is liable.* [Civ.C. § 2822(a)]."[18] Thus, in this case the sureties had no right to require the funds Miller gave to the estate be applied to the portion of the judgment imposing joint and several liability against her and the sureties. Miller was empowered by Civil Code section 2822 to instead specify they be applied to the portion of the judgment on which she was solely liable.

In sum, the sureties have not established they were entitled to impose a lien on funds Miller gave the public administrator. By giving the funds to the estate, Miller designated the funds be applied toward the portion of the obligation to the estate on which she was solely liable. In these circumstances, the sureties had no right to require the funds be applied to the joint and several portion of the judgment for which they had paid on their bonds. Accordingly, the court did not err in denying the sureties' request to impose a lien and for a constructive trust on the funds Miller delivered to the estate.

---

[16] Italics added.

[17] This interpretation is also consistent with common law decisions predating the 1993 amendment to Civil Code section 2822 which added the italicized language to subdivision (a) noted above. (See, e.g., *Giordano v. American Fidelity & Cas. Co.* (1950) 97 Cal.App.2d 309, 313 [217 P.2d 444] [where partial payment is made, it may be regarded as payment on the part of the judgment for which surety is not liable]; *Hogan v. Paddon* (1928) 91 Cal.App. 606, 616 [267 P. 392] [as a general proposition, a surety has no power to direct that the payment be applied to any particular debt].)

[18] Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2003) ¶ 6:3633, page 61-95, italics added.

## DISPOSITION

The judgment is affirmed. Respondent to recover his costs of appeal.

Perluss, P. J., and Woods, J., concurred.