Kathleen CHONG, an individual on behalf of herself, all others similarly situated and on behalf of the general public, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. 05–CV–2241 W(AJB).

United States District Court, S.D. California.

April 7, 2006.

Sheldon A. Ostroff, Law Offices of Sheldon A. Ostroff, San Diego, CA, for Plaintiff.

Jacqueline M. Jauregui, Sedgwick Detert Moran and Arnold, Los Angeles, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS AND STRIKE

WHELAN, District Judge.

Defendant State Farm Mutual Automobile Insurance Company ("Defendant") moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Alternatively, Defendant moves to strike Plaintiff's class allegations. Plaintiff Kathleen Chong ("Plaintiff") opposes. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons outlined below, the Court **DENIES** Defendant's motions.

### I. *BACKGROUND*

All of the facts discussed below are taken from Plaintiff's First Amended Complaint ("FAC") and assumed to be true. Plaintiff purchased automobile insurance from Defendant which provided first-party coverage for medical payments up to $5,000. After Plaintiff suffered unspecified injuries in an automobile accident with a third party, Defendant paid $5,000 towards Plaintiff's medical bills. Plaintiff pursued a claim against the third party with whom she had the accident and ultimately received a settlement of $65,000. To obtain that settlement, she paid approximately $28,000 in attorney fees and costs. Although Defendant knew about Plaintiff's action against the third-party tortfeasor, Defendant elected not to participate in it.

Plaintiff's policy provides that if she recovers damages from a liable party and Defendant has paid medical expenses under the policy's medical payments coverage, Defendant is entitled to a portion of Plaintiff's recovery. Specifically, the policy provides that Defendant is entitled to reimbursement for the lesser of either (1) the total amount of medical payments it made or (2) the amount by which Plaintiff's total recovery, including the benefits Defendant paid her under the medical payments coverage, exceeds her reasonable medical expenses. After Plaintiff recovered from the liable third party, Defendant sought reimbursement for 100% of the $5,000 it had paid in medical payments.

Plaintiff asserts that Defendant improperly sought reimbursement despite the fact that her net recovery after taking into account her attorney fees and costs was far below the amount she needed to make her whole. According to Plaintiff, Defendant's actions violate California's common law make whole rule. Plaintiff asserts that Defendant's improper application of its reimbursement provisions affects a broad class of California policyholders and she brings this putative class action asserting an unfair business practices claim and a number of common law claims on their behalf. Defendant now moves to dismiss or in the alternative to strike Plaintiff's class allegations.

### II. *LEGAL STANDARD*

#### A. *MOTION TO DISMISS*

Rule 12(b)(6) allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). A 12(b)(6) motion tests a complaint's legal sufficiency. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). Thus, dismissal is proper only where the plaintiff's complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See id.* "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed . . .

whether it is based on an outlandish legal theory or a close but ultimately unavailing one." *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (citations omitted). Thus, a court should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). Finally, a court must accept the complaint's allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996).

### B. MOTION TO STRIKE

Rule 12(f) provides that a federal court may strike from the pleadings any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. FED.R.CIV.P. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F.Supp. 820, 830 (N.D.Cal.1992).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint in its entirety. Defendant contends that Plaintiff's complaint fails to state a claim because 1) California courts do not routinely follow a blanket make whole rule and 2) no California case, including those that adopt some form of the make whole rule, has ever held that a policyholder's payment of attorney fees to secure a damage recovery from a third party means the policyholder has not been made whole and that the carrier is therefore not entitled to reimbursement. Defendant also argues that the make whole rule, if it exists in California, is only a default rule and that its reimbursement provision changes it. Alternatively, Defendant moves to strike Plaintiff's class allegations, arguing that the individualized inquiry required to determine if each class member has been made whole makes this dispute inappropriate for class treatment.

Plaintiff counters that her allegations regarding the make whole rule track a version of the rule that is well-established in California. Plaintiff acknowledges that the parties can contract around the make whole rule, but argues that Defendant's reimbursement provision is insufficiently specific to do so here. Plaintiff also argues that her FAC's unfair business practices claim meets the pleading standard set forth by the applicable California cases discussing such claims in the context of the make whole rule. Finally, Plaintiff asserts that her class definition is narrowly tailored and that given her theory of the case, no detailed individual inquiries will be necessary to determine if any given class member has been made whole.

### A. CALIFORNIA'S COMMON LAW MAKE WHOLE RULE

 California's make-whole rule is intertwined with the doctrine of subrogation. If a carrier pays a policyholder's first-party damages claim, the carrier, via subrogation, may assert a claim against the third-party tortfeasor. *Plut v. Fire-*

*man's Fund Ins. Co.*, 85 Cal.App.4th 98, 104, 102 Cal.Rptr.2d 36 (2000). "Subrogation is the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer." *Hodge v. Kirkpatrick Dev., Inc.*, 130 Cal.App.4th 540, 548, 30 Cal.Rptr.3d 303 (2005). Thus, subrogation essentially puts the carrier in the shoes of its policyholder to the extent of the carrier's payment of policy benefits. *Id.*

██ However, "[i]n personal injury actions ... the insurance company may not assert its subrogation claim directly against the third party tortfeasor on its own behalf." *Progressive West Ins. Co. v. Yolo County Superior Court*, 135 Cal. App.4th 263, 272, 37 Cal.Rptr.3d 434 (2005). Instead, to protect its rights, the carrier may interplead itself into the policyholder's action against the third-party tortfeasor. *Id.* at 273, 37 Cal.Rptr.3d 434. Alternatively, the carrier may choose to wait until the conclusion of the policyholder's tort action and then seek reimbursement pursuant to the applicable policy provisions. *Id.* When the carrier elects not to participate in the policyholder's tort action, the make-whole rule may limit the carrier's reimbursement rights. *Id.*

██ Under California's common law make whole rule, a carrier that has knowledge of a policyholder's tort action and decides not to participate in it may not seek reimbursement from the successful policyholder unless the policyholder's tort recovery exceeds his actual loss. *Plut*, 85 Cal.App.4th at 104–105, 102 Cal.Rptr.2d 36. California courts have held that this means a policyholder must only reimburse the nonparticipating carrier for the surplus, if any, remaining after the policyholder satisfies "his loss in full and his reasonable expenses incurred in the recovery." *Id.* at 105, 102 Cal.Rptr.2d 36. "Thus, when an insurer elects not to participate in

the insured's action against a tortfeasor, the insurer is entitled to subrogation only after the insured has recouped his loss *and* some or all of his litigation expenses incurred in the action against the tortfeasor." *Id.* (emphasis in original). This rule applies regardless of whether the carrier's asserted subrogation right is equitable or contractual. *Sapiano v. Williamsburg Nat'l Ins. Co.*, 28 Cal.App.4th 533, 537–38, 33 Cal.Rptr.2d 659 (1994).

 Of course, the parties to the insurance contract are free to agree to abrogate the make-whole rule, which serves as the default rule. *See generally Samura v. Kaiser Foundation Health Plan, Inc.*, 17 Cal.App.4th 1284, 22 Cal.Rptr.2d 20 (1993) (upholding according to its terms a reimbursement provision that provided the carrier with reimbursement rights regardless of whether the policyholder was made whole but noting that the enforceability of such provisions could be limited by the doctrine of unconscionability). To change the default make-whole rule and give the nonparticipating carrier a right of reimbursement even when the policyholder has not been made whole, the reimbursement provision must explicitly provide the carrier with first-dollar priority. *See Sapiano*, 28 Cal.App.4th at 538, 33 Cal.Rptr.2d 659. Thus, to change the make-whole rule a carrier must draft a "contractual provision clearly and specifically giving the insurer a priority out of proceeds from the tortfeasor regardless whether the insured was first made whole." *Sapiano*, 28 Cal. App.4th at 538–39, 33 Cal.Rptr.2d 659; *accord Progressive West Ins. Co.*, 135 Cal. App.4th at 274, 37 Cal.Rptr.3d 434.

### B. DEFENDANT'S REIMBURSEMENT PROVISION DOES NOT ALTER THE DEFAULT MAKE-WHOLE RULE

Plaintiff's allegations are sufficient, at least as an initial matter, to bring her

claim within California's version of the make whole rule. She has alleged that after her accident, she pursued a tort claim against the other party involved in the accident. (*FAC* at ¶ 25.) According to Plaintiff, despite Defendant's knowledge of her claim, it elected not to participate in her claim. *Id.* Plaintiff alleges that even though her recovery from the third party did not make her whole, Defendant demanded reimbursement for the full $5,000 it had paid in medical benefits under the policy. *Id.* at ¶¶ 27–29.

 If indeed Plaintiff has sufficiently alleged that she was not made whole, something the Court will discuss more fully below, Defendant was not entitled to any reimbursement because its reimbursement provision does not alter California's default make whole rule. According to the FAC, Defendant's reimbursement provision provides in part that:

> When we pay medical expenses under this coverage, we are entitled to be paid out of any subsequent recovery for bodily injury from a liable party or such party's insurer the lesser of: (a) what we have paid; or (b) the amount by which the sum of the total recovery for bodily injury from all liable parties and what we have paid under this coverage exceeds the total amount of reasonable and necessary medical expenses the injured person incurred.

(FAC at ¶ 9.) Nowhere does the reimbursement provision explicitly give Defendant a contractual right to "priority out of proceeds from the tortfeasor regardless of whether the insured was first made whole." *Sapiano*, 28 Cal.App.4th at 539, 33 Cal.Rptr.2d 659. In contrast, the applicable provision in *Samura* stated that the carrier was entitled to reimbursement for its payments "regardless of whether the total amount of the recovery of the Member . . . on account of the injury or illness is less than the actual loss suffered by the

Member." *Samura*, 17 Cal.App.4th at 1289, 22 Cal.Rptr.2d 20.

Subsection (b) of Defendant's reimbursement provision appears to be intended to limit Defendant's reimbursement rights to situations when the injured person will not be left with insufficient funds to pay her medical bills and includes her bodily injury recovery in making that calculation. Thus, the parties appear to have intended to prioritize Plaintiff's medical expenses over her bodily injury recovery. However, despite what appears to be the intent of the provision, Defendant did not explicitly provide itself with first-dollar priority to the policyholder's bodily injury damages regardless of whether the policyholder has been made whole for his or her bodily injuries. Had Defendant wanted to provide itself with access to its policyholders' bodily injury recoveries when those recoveries exceeded the policyholders' medical bills but did not fully compensate them for their bodily injuries, it could have easily copied the language at issue in *Samura* and done so. It did not. Thus, under *Samura* and *Sapiano*, Defendant's reimbursement provision fails to change California's common law make whole rule and, if in fact Plaintiff was not made whole, Defendant's reimbursement demand violated California law.

## C. PLAINTIFF'S ALLEGATIONS DEMONSTRATE THAT SHE HAD NO SURPLUS FROM WHICH DEFENDANT WAS ENTITLED TO SEEK REIMBURSEMENT

Plaintiff alleges that she was not made whole via her recovery from the third-party tortfeasor because she expended approximately $28,000 in attorney fees and costs in securing that recovery. (*FAC* at ¶¶ 27–29.) Despite the fact that she was not made whole, she alleges that Defendant sought reimbursement for 100% of its medical payments and that she agreed to Defendant's demands and paid Defendant

$5,000 in satisfaction of its claim. (*FAC* at ¶¶ 27–29.) According to Plaintiff, the amount that would make her whole is $65,000, the amount for which she settled her tort claim. Since her total recovery, after attorney fees and costs and including Defendant's medical payments, was approximately $42,000 ($65,000–$28,000 + $5,000 = $42,000), Plaintiff contends that she was not made whole and that there was therefore no surplus from which Defendant was entitled to seek reimbursement.

Defendant disagrees and argues that Plaintiff's version of the make whole rule would amount to an improper shift of attorney fees and costs to insurance carriers. Defendant concedes that it must contribute a pro rata portion of Plaintiff's attorney fees and costs under the common fund doctrine if it seeks reimbursement, but argues that its responsibility for attorney fees and costs is limited to its pro rata portion.[1] Finally, Defendant argues that no California court has ever held that a policyholder is not made whole because she incurred attorney fees and costs in pursuing recovery from the tortfeasor. On the contrary, Defendant identifies a number of older California decisions that enforced reimbursement provisions Defendant claims are similar to the one in Plaintiff's policy.

In at least one respect, Defendant is correct: The parties' briefs and the Court's independent research did not identify a single reported California decision holding that the policyholder's payment of attorney fees and costs meant that the policyholder had not been made whole. However, that does not mean the Court must grant Defendant's motion to dismiss. On the contrary, "federal courts are not precluded from affording relief simply because neither the state supreme court nor the state legislature has enunciated a clear rule governing a particular type of controversy or claim." *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391 (9th Cir.1994). In such situations the federal court's role is to attempt to predict the result that the state supreme court would reach if it considered the issue. *Id.* To do so the federal court may rely on state appellate opinions, statutes, treatises and even decisions from other states. *Id.; Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). Thus, although the Court is reluctant to do so, it will attempt to predict how the California Supreme Court would rule if confronted with this issue.[2]

Here, the applicable state appellate opinions tend to support Plaintiff's theory that attorney fees and costs must be taken into account when determining whether there is a surplus from which the nonparticipating carrier is entitled to seek reimbursement. In *Plut,* the Second District Court of Appeal held that the nonparticipating carrier's right to reimbursement was limited and that the policyholder "need not account to the nonparticipating insurer 'for more than the surplus remaining in his hands, after satisfying his loss in full *and his reasonable expenses incurred in the recovery.'*" *Plut,* 85 Cal.

---

1. The Court notes that, according to Plaintiff's allegations, Defendant never offered to contribute a pro rata portion of its attorney fees and costs or to correspondingly reduce its reimbursement demand. Although this appears to be a clear violation of California's common fund doctrine, regardless of whether or not Plaintiff has been made whole, Plaintiff's various causes of action are not premised on that theory.

2. Certification of this question to the California Supreme Court would obviously be the ideal solution. Unfortunately, the California Supreme Court does not accept certified questions from district courts. *See* CAL.RULES OF COURT, RULE 29.8. Should the parties elect to appeal this Court's ruling, perhaps the Ninth Circuit will choose to certify the question to the California Supreme Court.

App.4th at 105, 102 Cal.Rptr.2d 36 *quoting* 16 Couch on Insurance, (2d ed.1983) § 61:47, p. 130 (emphasis supplied). Had the *Plut* court left it at that, the Court's task in this case would be easier. Instead, the *Plut* court continued: "Thus, when an insurer elects not to participate in the insured's action against a tortfeasor, the insurer is entitled to subrogation only after the insured has recouped his loss and *some or all* of his litigation expenses incurred in the action against the tortfeasor." *Plut*, 85 Cal.App.4th at 105, 102 Cal.Rptr.2d 36 (emphasis supplied). The *Plut* court's first statement suggests that a policyholder is entitled to recover her entire loss plus *all* of her litigation expenses while the second statement indicates that perhaps the policyholder is only entitled to recover a portion of her litigation expenses, which may be a reference to the common fund doctrine. Of course, *Plut's* use of the word "some" in the second statement could also refer to the fact that the policyholder's litigation expenses recovery is limited to only her reasonable expenses. Unfortunately, the out of state cases cited by *Plut* to support its second statement do not shed any light on its meaning. And, although the *Progressive West* Court quoted this portion of *Plut* with approval, it did not clarify it. *See Progressive West Ins. Co.*, 135 Cal.App.4th at 273, 37 Cal.Rptr.3d 434. Thus, while the language in *Plut* and *Progressive West* may be read to lend some support to Plaintiff's position, it is not dispositive.

Nor are the California cases upon which Defendant relies particularly helpful in resolving the issue before the Court, as none directly addressed it. In *Travelers Indem. Co. v. Ingebretsen*, 38 Cal.App.3d 858, 113 Cal.Rptr. 679 (1974), the court, in holding that the carrier was entitled to subrogation regardless of whether the policyholder had been made whole, relied heavily on the fact that the carrier's lawyers assisted the policyholder and the policyholder's lawyers in the third-party litigation. *Id.* at 866–67 & n. 7, 113 Cal.Rptr. 679. As discussed above, the California decisions applying the make whole rule have only done so when the carrier elects *not* to participate in the policyholder's tort action, as Defendant did here. Likewise, the court in *Lee v. State Farm Mut. Automobile Ins. Co.*, 57 Cal. App.3d 458, 465–68, 129 Cal.Rptr. 271 (1976) held only that reimbursement provisions are generally enforceable but that the carrier must contribute a pro rata portion of the policyholder's attorney fees when it seeks reimbursement even if the reimbursement provision does not so provide. The *Lee* court did not address the make whole rule, let alone hold that reimbursement provisions like Defendant's were enforceable even when the policyholder had not been made whole. *Id.* Nor did *Hartford Accident Indemnity Co. v. Gropman*, 209 Cal.Rptr. 468, 163 Cal. App.3d Supp. 33, 38–39 (1984) address the make whole rule and its potential effect on the treatment of a policyholder's litigation expenses. The policyholder in *Hartford* did not argue that she should not have to reimburse Hartford for its medical payments because she had not been made whole due to the litigation expenses she incurred in pursuing the third party recovery. *See Hartford*, 163 Cal.App.3d Supp. at 37–38, 209 Cal.Rptr. 468. Instead, she argued only that Hartford should have to contribute its pro rata portion of her attorney fees if it sought reimbursement. *Id.* at 39–40, 209 Cal.Rptr. 750. The *Hartford* court therefore did not have occasion to consider the issue before this Court. Finally, the *Zubia v. Farmers Ins. Exch.*, 14 Cal.App.4th 790, 798, 18 Cal.Rptr.2d 65 (1993) court expressly declined to consider the make whole rule because the policyholder raised it for the first time on appeal.

However, several courts in other jurisdictions have directly addressed the effect

of attorney fees and costs on the make whole analysis. Most have concluded that the carrier is entitled to seek reimbursement only if the policyholder is left with a surplus after satisfying her entire loss *plus* her reasonable litigation expenses, including attorney fees.[3] *See Skauge v. Mountain States Telephone & Telegraph Co.,* 172 Mont. 521, 565 P.2d 628, 632 (1977) ("we adopt the view that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tortfeasor"); *Swanson v. Hartford Ins. Co.,* 309 Mont. 269, 46 P.3d 584, 588 (2002) (affirming *Skauge* ); *Washtenaw Mut. Fire Ins. Co. v. Budd,* 208 Mich. 483, 175 N.W. 231, 232 (1919) ("The general rule is unquestionably that the insurer can recover from the insured ... only the excess received from the wrongdoer, after full compensation for his loss, including the costs and expenses thereof."); *Shawnee Fire Ins. Co. v. Cosgrove,* 85 Kan. 296, 116 P. 819, (1911) ("It is also held in these cases that if the insured ... recovers an amount from the wrongdoer in excess of the amount of the balance of his loss and expenses of suit ... he holds such balance in trust for the insurer"); *accord Nationwide Mut. Ins. Co. v. Kintz,* 27 Pa. D & C.3d 164, 168 (Pa.Com.Pl.1983); *St. Paul Fire & Marine*

*Ins. Co. v. W.P. Rose Supply Co.,* 19 N.C.App. 302, 198 S.E.2d 482, (1973). Others have, however, implicitly or explicitly rejected similar policyholder arguments and required the carrier to pay only its pro rata portion of the policyholder's fees and costs under the common fund doctrine. *Powell v. Blue Cross & Blue Shield of Alabama,* 581 So.2d 772, 781 (Ala.1990) *overruled on other grounds by Ex parte State Farm Fire and Casualty Co.,* 764 So.2d 543 (Ala.2000); *Peterson v. Safeco Ins. Co. of Illinois,* 95 Wash.App. 254, 976 P.2d 632, 635–36 (1999).

 When considered in light of the language in *Plut* and *Progressive West* quoted above, which most directly addresses the issue before the Court, the Court believes the California Supreme Court would follow the well-reasoned out-of-state decisions which hold that the policyholder's litigation expenses must be taken into account when determining whether the policyholder has been made whole.[4] The California cases discussing the make whole rule consistently refer to the nonparticipating carrier's reimbursement right as being limited to the surplus resulting from the policyholder's receipt of both insurance benefits and tort damages. *Plut,* 85 Cal. App.4th at 105, 102 Cal.Rptr.2d 36; *Progressive West,* 135 Cal.App.4th at 273, 37 Cal.Rptr.3d 434; *Hodge v. Kirkpatrick Dev., Inc.,* 130 Cal.App.4th 540, 553, 30 Cal.Rptr.3d 303 (2005). However, when a

---

**3.** Since the parties elected not to direct the Court to any extra-jurisdictional authority addressing this issue, the Court relies on its own research.

**4.** This rule and the common fund doctrine are not mutually exclusive. Indeed, at least four states that follow this rule also follow the common fund doctrine. *See* Johnny C. Parker, *The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation,* 70 M.O. L.Rev. 723, 774 n. 396 (2005) (noting that Michigan, Montana, Texas

and Pennsylvania all recognize both doctrines). The made whole rule does not apply to all cases where the nonparticipating carrier seeks reimbursement. Rather, it applies only to a small subset of cases where the carrier has elected not to participate in the policyholder's tort action and the policyholder's payment of her attorney fees and costs has rendered her recovery inadequate to fully compensate her for her loss. As discussed more fully below, whether that is the fact in any individual case will depend on the facts of that case.

policyholder's attorney fees and costs exceed the amount the carrier paid in policy benefits, there is no surplus.[5] Thus, precluding the carrier from seeking reimbursement where the policyholder's attorney fees and costs exceed the carrier's payments does not provide the policyholder with a windfall. *See Skauge*, 565 P.2d at 632. Instead, it simply more nearly puts the policyholder back in the situation she would have been had her loss not occurred.

Nor is this result unfair to the carrier. If either the policyholder or the carrier must to some extent go unpaid because the policyholder has recovered less than her total loss, *"the loss should be borne by the insurer for that is the risk the insured has paid it to assume." Skauge*, 565 P.2d at 632 (emphasis in original); *see also Swanson*, 46 P.3d at 587. In addition, it is important to note that this rule applies in California *only* to the carrier that elects to sit on the sidelines or fails to contract around it in its policy. A carrier that wishes to avoid this result may do so by simply intervening in the policyholder's tort action or drafting an explicit contractual provision partially or wholly abrogating the make whole rule. *Sapiano*, 28 Cal.App.4th at 538, 33 Cal.Rptr.2d 659. Since insurance policies are generally adhesion contracts, drafting such a provision should not be a difficult task for any carrier interested in doing so. *See Crawford v. Weather Shield Mfg., Inc.*, 136 Cal. App.4th 304, 329, 38 Cal.Rptr.3d 787 (2006)

("Insurance contracts are classic contracts of adhesion").

On the other hand, the converse of the rule discussed above *would* be unfair to policyholders. Under that rule, a carrier that elected not to participate in its policyholder's tort action would be in effect allowed to engage in a risk free gamble with the policyholder's money. If the policyholder loses her tort action, the carrier has lost nothing because the carrier has not yet incurred any attorney fees and cots.[6] If the policyholder wins, the carrier, knowing the outcome, may then offer to pay its pro rata portion of attorney fees and costs in exchange for reimbursement. Plainly, such a rule would not be in keeping with the equitable principles underlying the make whole rule and the subrogation doctrine. Moreover, such a rule would encourage insurance carriers, which generally have resources far superior to those of their policyholders, to sit out their policyholders' tort claims. The doctrine of subrogation is founded in part on the notion that the party who is responsible for a loss should pay. *Barnes v. Ind. Auto. Dealers Assoc. of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1392 (9th Cir.1995) ("The right to subrogation, even when created by agreement between the insured and the insurer, is designed to compel discharge of the obligation by the one who in equity should bear the loss."). Surely a default rule that encourages insurance carriers with their superior resources to sit on the sidelines while their policyholders, with inferior resources, pursue the tortfeasors

---

5. For example, if the policyholder's total loss is $50,000, the third party recovery is $50,000, the carrier has paid $5,000 and the policyholder has spent $5,001 in attorney fees and costs, the policyholder is left with $1 in uncompensated loss, even if she retains the entire amount she received from the insurance company ($55,000 total recovery— $5,001 in attorneys fees = $49,999, $1 less than the policyholder's total loss of $50,000.)

6. The availability of contingent fee arrangements might potentially minimize this rule's impact and allow both the policyholder and the carrier to effectively gamble with the attorney's money. However, not all policyholders will be able to secure contingent representation.

responsible for their injuries alone would not serve that purpose.

■ For all of these reasons, the Court concludes that the California Supreme Court would hold that, absent a contractual provision to the contrary, the make whole rule requires that a policyholder fully recover her loss and litigation expenses, including attorney fees and costs, before a nonparticipating carrier can seek reimbursement from her tort recovery. Accordingly, Plaintiff has sufficiently alleged that she was not made whole and that there was no surplus from which Defendant could properly seek reimbursement.[7] Defendant's motion to dismiss this action on the basis that Plaintiff has not sufficiently alleged that she was not made whole is therefore **DENIED**.

### D. PLAINTIFF'S UNFAIR COMPETITION CLAIM IS SUFFICIENTLY PLED

In addition to moving to dismiss Plaintiff's entire FAC on the theory that her payment of attorney fees and costs does not mean she has not been made whole, Defendant also argues that Plaintiff's unfair competition claim is insufficiently pled. Having already concluded above that Plaintiff has sufficiently alleged that she has not been made whole, Defendant's argument here is easily rejected.

In *Progressive West*, the plaintiff alleged that Progressive had a pattern and practice of seeking reimbursement for its medical payments without determining whether the policyholder had been made whole. *Progressive West*, 135 Cal.App.4th at 283, 37 Cal.Rptr.3d 434. He also alleged that

Progressive had a pattern and practice of ignoring California law by seeking 100% reimbursement for its medical payments. *Id.* The California Court of Appeal held that these allegations were sufficient to state a claim for unfair competition. *Id.*

■ Here, Plaintiff alleges in the FAC that Defendant violated California's unfair competition laws in similar ways. Specifically, Plaintiff alleges that Defendant had a pattern and practice of (1) not determining whether its policyholders had been made whole; (2) not participating in their actions against third party tortfeasors; (3) waiting for its policyholders to resolve their actions against the third parties; and (4) then improperly demanding 100% reimbursement of the medical payments it had made. (*FAC* ¶ 10.) Under *Progressive West*, and Rule 8's liberal pleading standards, these allegations are sufficient to state a claim for violations of California's unfair competition law. Defendant's motion to dismiss Plaintiff's unfair competition claim is **DENIED**.

### E. DEFENDANT'S MOTION TO STRIKE IS PREMATURE

Defendant also moves to strike Plaintiff's class allegations, arguing that no common questions exist because the inquiry into whether each class member has been made whole will necessarily be individualized. Plaintiff counters and, in an opposition that reads like a motion for class certification, argues that her class allegations meet the standard set forth in the Federal Rules of Civil Procedure.

---

7. Of course, the Court is aware of the reality that plaintiffs may take their attorney fees into account when deciding what is an acceptable settlement amount, particularly when they have entered a contingent fee arrangement. *See e.g. Peterson*, 976 P.2d at 635–36. Discovery may demonstrate that in this case Plaintiff did take her attorney fees into account when she settled her tort claim and that the amount

that really fully compensated her for her losses and made her whole is something less than the $65,000 for which she settled. Discovery may also show that for some other reason(s) the amount required to make Plaintiff whole is more or less than $65,000. The Court expresses no opinion on such issues and in any event they are not properly resolved on a motion to dismiss.

Both parties are getting ahead of themselves.

 It is well established that the Federal Rules of Civil Procedure place the burden of meeting Rule 23's requirements on the party seeking class certification. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). "Mere repetition of the language of the Rule, without a statement of the basic facts is insufficient to gain class certification." *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D.Cal.2005). However, even where a plaintiff's complaint contains conclusory class allegations, those allegations should not be stricken if they relate to the subject matter of the litigation and are not redundant, impertinent or immaterial. *Id.*

Plaintiff's class allegations here may be somewhat conclusory, but they are nonetheless sufficient to survive a motion to strike. Simply put, Defendant's motion to strike is premature. *Id.* As in *Clark*, Plaintiff's allegations address each of Rule 23's requirements, relate to the subject matter of this litigation, and are not redundant, impertinent or immaterial. *See* (FAC at ¶¶ 31–39.) Construing the complaint in the light most favorable to the Plaintiff, as the Court must on a Rule 12 motion, Plaintiff's class allegations are sufficient. Defendant's motion to strike is therefore **DENIED.**[8]

### IV. CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Defendant's motion to dismiss and motion to strike. (*Doc.Nos.* 12–1, 15–1.) The Court finds that neither the California Supreme Court nor the Ninth Circuit has yet to rule on whether attorney fees and costs must be taken into account when conducting the make-whole analysis. That

is whether, absent a contract provision to the contrary, California's make whole rule limits the nonparticipating carrier's reimbursement rights to the surplus remaining in the policyholder's hands after satisfying her covered losses and her reasonable litigation expenses, including attorney fees and costs, incurred in the third party tort action. The Court further finds that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance this litigation's ultimate termination. The Court therefore **CERTIFIES** this issue for immediate appeal pursuant 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

---

8. Of course, "[w]hether Plaintiff will be able to succeed on a motion for class certification, however, is an entirely separate matter to be

decided at a later date." *Clark,* 231 F.R.D. at 407.