## Nationwide Mutual Insurance Co. v. Butler

*Fisher, Long and Rigone,* for plaintiff.
*Cassidy & Lamproplos,* for defendant.

HUDOCK, *J.,* April 25, 1983—This matter has been submitted for non-jury trial with a stipulation of facts. Plaintiff-insurer issued an automobile insurance policy to defendant-insured, and this policy provided normal basic loss benefits in the amount of $15,000 together with supplemental work loss coverage in the amount of $10,000. An additional premium was paid for this supplemental work loss coverage.

On April 4, 1977, plaintiff was injured in an automobile accident caused by the negligence of one Bart Yonek. Plaintiff paid defendant work loss benefits of $15,000, the amount required under the No-fault Act, and an additional sum of $8,348.83 under the endorsement providing for additional work loss coverage.

An action was instituted by the insured and his wife against Bart Yonek and Albert Zabinski at No. 3168 of 1979 in the Court of Common Pleas of Westmoreland County. The verdict in the non-jury trial was in favor of plaintiff (defendant herein) and his wife in the amount of $165,000 against defend-

ant Bart Yonek. Special findings of fact were made by the trial court as follows:

1. Compensation to the plaintiff, William Butler, for pain and suffering and for permanent injuries — $25,000.

2. Compensation to plaintiff, Virginia Butler, for loss consortium — $5,000.

3. Compensation for loss of present wages — $85,000.

4. Compensation for future wages, reduced to present worth — $50,000.

Bart Yonek's insurance carrier paid its policy limit of $25,000 to Mr. and Mrs. Butler and the action was settled, discontinued and ended. The sum of $25,000 was the total amount the Butlers received in satisfaction of this judgment. The parties in this action have stipulated that Bart Yonek is judgment proof, and he was released from liability for the balance of the judgment.

Upon receipt by William Butler of the $25,000 from Bart Yonek's insurance carrier, plaintiff herein requested reimbursement under its right of subrogation for the amount of $8,348.83 paid as additional work loss benefits. When William Butler refused to pay the amount demanded, plaintiff-insurer filed this complaint in assumpsit to obtain reimbursement of this amount. Defendant-insured filed a counterclaim for an additional $1,651.17 in work loss benefits not yet paid by plaintiff-insurer.

The policy in question contains the following language:

"REIMBURSEMENT AGREEMENT To the extent of any benefits we pay under this coverage, we are entitled to the amount of any settlement or judgment received by the insured for the bodily injury. We are entitled to this reimbursement, however, less the total amount of all economic losses suffered

by the recipient and not compensated by insurance or similar benefits. Further, our right to be reimbursed is subject to any applicable provisions and limitations of the Pennsylvania No-Fault Motor Vehicle Insurance Act."

Defendant points to what he calls the clear and unambiguous language of the above provision of the policy to defeat plaintiff's claim. Defendant contends that the insurance agreement itself provides that the insurer has a right of reimbursement only to the extent that the insured has received any sums over and above "all economic losses suffered by the recipient and not compensated by insurance or similar benefits". Since it was judicially determined that the insured herein suffered an economic loss in the amount of $135,000, but received compensation from the tortfeasor for only $25,000 of that loss, defendant argues that no right of subrogation exists under the clear meaning of the contractual language.

Plaintiff points to the language of the No-fault Act itself to support its right of subrogation. 40 P.S. §1009.111(2) provides as follows:

"Whenever an individual who receives or is entitled to receive no-fault benefits for an injury has a claim or cause of action against any other person causing the injury as based upon a determination of fault, the obligor is subrogated to the rights of the claimant only for:

(A) Elements of damage compensated for by security for the payment of no-fault benefits in excess of the minimum basic loss benefits required under this Act are recoverable; and

(B) The obligor has paid or become obligated to pay accrued or future no-fault benefits in excess of the minimum basic loss benefits required under this Act."

Plaintiff-insurer also points to the basic personal injury protection endorsement required by the No-fault Act and to the form approved by 31 Pa. Code §66.102 which provides that ". . . if any payment is made under this coverage, the Company is subrogated to the rights of the person to whom or for whose benefit these payments were made, to the extent of the amounts paid. . . ."

This court agrees with plaintiff that the Pennsylvania No-fault Act provides for a right of subrogation when the victim recovers for economic losses above the basic loss benefits. The problem here, however, is that it cannot be said that the victim has made a recovery for "economic losses" when he has only received $25,000 from the tortfeasor and his economic and non-economic losses are in the amount of $165,000. Had defendant received the full amount of his verdict from the tortfeasor, this court would have no difficulty in finding that plaintiff-insurer is entitled to reimbursement for the amount of additional work loss benefits it paid to defendant-victim.

General principles of subrogation law must be studied in order to determine the issue. Subrogation is intended to be used to avoid a double recovery by the insured victim. Most courts in determining reimbursement rights of the insurer limit the recovery against the insured to the amount by which the sum received by the insured from the wrongdoer, together with the insurance payments made, exceeds the loss and expense incurred by the insured in realizing the claim against the wrongdoer. See 44 Jur 2d Insurance §1820. Generally speaking, the insured is first entitled to be compensated for his total loss before the right of subrogation attaches. In Willard v. Automobile Underwriters, Inc., 407 N.E. 2d 1192 (Ind. App. 1980) the insured was injured in an auto-

mobile accident and brought suit against the negligent driver. Judgment was entered in the sum of $15,000. The victim's insurer, which had paid the victim $9,000 in benefits for lost wages, claimed that it was entitled to $9,000 of the damage award pursuant to its right of subrogation. The court, in holding against the insurer's position, stated:

"The general rule applicable to actions based on the ground of subrogation is that the right does not exist unless the whole debt has been paid . . . Even if a surety is liable for only part of the debt and pays that part for which he is liable, he cannot be subrogated until the whole demand or debt is satisfied".

Here, since the insured has not been made whole since his loss has been determined to be $165,000, and his recovery has only been $48,348.83 ($25,000 from the tortfeasor plus $23,348.83 in work loss benefits from the plaintiff-insurer). Thus, no right of subrogation arises.

It is interesting to note that the above quoted principles of subrogation seem to be incorporated in the very language of the policy itself here in question. The "reimbursement agreement" quoted at length above provides that the insurer is entitled to reimbursement "less the total of the economic losses suffered by the recipient and not compensated by insurance or similar benefits". The clear meaning of the policy language, therefore, seems to compel the conclusion that no right of subrogation or "reimbursement" arises until the victim has been compensated completely by "insurance or similar benefits" for economic losses — which this defendant was not.

As a final matter, it should be noted that there is no claim here that defendant-insured has in any way forfeited his rights by reason of his having released the tortfeasor. There is a line of cases in

Pennsylvania which provides that when an injured party settles with the tortfeasor he waives his right to a judicial determination of his losses and conclusively establishes the settlement amount as full compensation for his damages. In those situations, it has been held that the insurance company has a right of subrogation attaching to the amount of the settlement. See Illinois Auto Insurance v. Braun, 280 Pa. 550, 421 A.2d 1074 (1982). Even if this matter had been raised by plaintiff, however, it is doubtful that plaintiff could prevail inasmuch as it has been stipulated that the tortfeasor is judgment proof and, presumably, no monies could be obtained from him personally; thus the settlement has not prejudiced plaintiff.

Accordingly, this court finds a verdict in favor of defendant on the claim of plaintiff, and in favor of defendant and against plaintiff on the counterclaim in the amount of $1,651.17.

### ORDER OF COURT

And now, this April 25, 1983, the court finds a verdict in favor of defendant, William C. Butler, and against plaintiff, Nationwide Mutual Insurance Company on the claim of plaintiff; the court further finds a verdict in favor of William C. Butler in the amount of $1,651.17 and against Nationwide Mutual Insurance Company on the counterclaim.