60 Cal.Rptr.3d 782 (2007)
151 Cal.App.4th 1512
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent;
Tony Delanzo, Real Party in Interest.
No. D049427.
Court of Appeal of California, Fourth District, Division One.
June 14, 2007.
*784 Luce, Forward, Hamilton & Scripps, Peter H. Klee, San Diego, and John T. Brooks for Petitioner.
No appearance for Respondent.
Robert S. Gerstein; Law Offices of Sheldon A. Ostroff and Sheldon A. Ostroff; Huffman & Kostas, James C. Kostas and David M. Huffman, San Diego, for Real Party in Interest.
*783 HALLER, J.
An insurer that pays benefits to its insured under a first party policy is generally entitled to reimbursement from funds paid by the third party wrongdoer for the *785 covered losses. One exception to this rule is the common law "made-whole" doctrine, which provides that an insurer is not entitled to these funds unless the insured has been made whole by the recovery from the tortfeasor and any other source. Whether an insured has been made whole is determined by comparing the insured's total damages resulting from the third party's tortious conduct with the total amount the insured recovered in compensation for those damages. The narrow issue presented in this writ proceeding is whether, in calculating the made-whole amount under no-fault medical payments insurance coverage, the insured's total recovery amount must be reduced by the insured's attorney fees and costs incurred to obtain the compensation from the third party tortfeasor. We conclude that under California law these expenses are not deducted when calculating the total recovery received by the insured.
Because the validity of plaintiffs claims in this case depends on a conclusion that the attorney fees and costs are deducted from the insured's gross recovery in calculating whether the insured has been made whole, we determine plaintiffs complaint does not state an actionable claim under California law. We thus grant defendant's petition for a writ of mandate, and order the court to vacate its order overruling defendant's demurrer and enter a new order sustaining the demurrer.

FACTUAL AND PROCEDURAL BACKGROUND
Tony Delanzo filed a class action complaint against his automobile insurer, Allstate Insurance Company (Allstate). As amended, the complaint alleged Delanzo had an Allstate automobile policy that included first party, no-fault medical payments insurance coverage (med-pay coverage). Delanzo alleged this insurance covers reasonable and necessary medical expenses incurred because of an automobile accident and is "designed to provide an additional source of funds" for these expenses.
Delanzo allegedly suffered injuries resulting from an automobile accident with a third party. Under Allstate's med-pay policy provisions, Allstate paid Delanzo $4,203.36. Delanzo then settled his claim against the third party tortfeasor for $11,000, and received the settlement payment in full. Delanzo alleged he incurred attorney fees of $3,850 and costs of $2,076.84 (for a total of $5,926.84) to obtain this settlement.
Allstate requested that Delanzo repay the $4,203.36 under Allstate's policy provision, which states: "Subrogation Rights [¶] When we pay, your rights of recovery from anyone else become ours up to the amount we have paid. You must protect these rights and help us enforce them." (Boldface omitted.) In response, Delanzo paid Allstate $1,696.13, which Allstate agreed was in full satisfaction of its reimbursement claim. Allstate agreed to the reduction based on the common-fund rule that an insurer is required to deduct from its reimbursement a pro rata portion of the insured's attorney fees and costs incurred to recover covered losses against a third party tortfeasor when the insurer had knowledge of, but did not participate in, the litigation. (See Lee v. State Farm Mid. Auto. Ins. Co. (1976) 57 Cal.App.3d 458, 465-466, 129 Cal.Rptr. 271.)
Based on these alleged facts, Delanzo asserted four causes of action: (1) violation of Business and Professions Code section 17200, (2) conversion, (3) unjust enrichment, and (4) declaratory relief. The legal basis for each cause of action was Delanzo's assertion that Allstate's reimbursement claim was improper and unlawful because Delanzo was not first "made *786 whole" by the third party settlement ($11,000) plus the amount received from Allstate ($4,203.36), when taking into account the attorney fees and costs incurred to obtain the settlement ($5,926.84). Delanzo did not dispute that the $11,000 settlement amount constituted full compensation for his injuries from the third party, but alleged he was not made whole by this amount because his total gross recovery of $15,203.36 ($11,000 from the settlement plus $4,203.36 from Allstate), minus the costs and attorney fees ($5,926.84) to obtain this settlement, was less than $11,000.[1]
Delanzo sought to represent the class of "all California insureds, past and present of [Allstate] who: (1) were not made whole after deducting attorney's fees and costs from the money they received from the resolution of their claims against third party tortfeasors; (2) the amount paid by [Allstate] to or on behalf of such insureds pursuant to the medical payments coverage contained in their personal automobile insurance policies was less than the amount paid by such insureds for such attorney's fees and costs; and (3) such insureds paid [Allstate] money in response to its demand for reimbursement of payments it paid under such medical payments coverage."
Allstate demurred to the complaint, arguing that Delanzo's claims did not state a cause of action on any legal theory because, under California law, the made-whole doctrine does not include a consideration of attorney fees and costs in determining whether an insured was made whole. Allstate maintained that Delanzo's view of the made-whole rule as including a consideration of these expenses was improper because it conflicted with the settled "equitable apportionment" or "common-fund" rule that an insurer's reimbursement is subject to the requirement that it pay a proportionate amount of the insured's attorney fees incurred to obtain the recovery from the third party. Allstate further asserted that if Delanzo's position were accepted, it would eliminate an insurer's rights to obtain reimbursement in virtually every med-pay case. Because med-pay benefits are relatively small and generally less than the amount of attorney fees to obtain recovery for personal injury losses (see Nager v. Allstate Ins. Co. (2000) 83 Cal.App.4th 284, 289-290, 99 Cal.Rptr.2d 348), Allstate claimed that an insurer would not be entitled to reimbursement in situations where the insured shows its recovery from the third party was equal to the insured's losses.
The trial court overruled the demurrer, finding that under the made-whole doctrine an insurer who does not participate in the litigation against the third party is entitled to reimbursement only "when the amount the carrier paid is not exceeded by the attorney's fees and Costs incurred by the insured to obtain a tort recovery."
Allstate petitioned for a writ of mandate, challenging the court's order overruling its demurrer. We issued an order to show cause, and provided the parties the opportunity to file additional briefing and to present oral argument. After considering the parties' contentions, we grant the petition.[2]

*787 DISCUSSION

I. Overview

The legal issue presented here concerns the appropriate allocation of funds received by an insured from a third party tortfeasor as between the insured and insurer.[3] Specifically, under California law, does the made-whole rule preclude an insurer's reimbursement from its insured under a med-pay policy provision after the insured obtained a recovery from a third party which fully compensated the insured for his or her personal injury losses, but the insured's attorney fees and costs reduced that amount such that the insured's net recovery was less than his or her total losses?
It is helpful to illustrate this issue with round figures. Assume that an insured recovers $6,000 in damages from a third party tortfeasor and this amount reflects the insured's total personal injury losses caused by the tortfeasor. His insurer had previously paid him $2,000 for his covered medical expenses; thus the insured obtained a total of $8,000. The insured's attorney fees and costs to collect the $6,000 were $2,400. Is the insurer entitled to reimbursement of any portion of the amount paid to the insured by the tortfeasor? Under Allstate's view of the law, Allstate would say yes because the insured's gross recovery ($6,000 plus $2,000 ($8,000)) is more than the insured's total personal injury losses of $6,000, and thus any retention of the $2,000 (minus $800, which is the pro rata amount attributable to collecting damages for the covered injuries) would result in double recovery by the insured. Under Delanzo's view of the law, Delanzo would say no because one must subtract the attorney fees and costs from the gross recovery ($6,000 plus $2,000 minus $2,400) which equals $5,600, or $400 less than $6,000, and therefore the insured was not made whole and thus should not be required to repay any money to the insurer.
In resolving these different views, we first discuss the made-whole doctrine in the broader context of an insurer's subrogation and reimbursement rights. We then summarize the manner in which other jurisdictions have treated this attorney fees and costs issue. We then explain our conclusion that under California law an insured's attorney fees and costs should not be deducted from the insured's total recovery for purposes of the made-whole doctrine under med-pay coverage.

II. Applicable Legal Principles

A. Subrogation and Reimbursement Doctrines

Traditionally, an insurer that pays its insured's claim is entitled to recover the payment from the third party who caused the insured's covered loss. This concept is called subrogation, and can arise by contract, statute, or equitable principles. (See Hodge v. Kirkpatrick Development, Inc. (2005) 130 Cal.App.4th 540, 548, 30 Cal.Rptr.3d 303 (Hodge); Sapiano v. Williamsburg Nat. Ins. Co. (1994) 28 Cal. App.4th 533, 537-538 & fn. 1, 33 Cal. Rptr.2d 659 (Sapiano); Travelers Indem. Co. v. Ingebretsen (1974) 38 Cal.App.3d 858, 864, 113 Cal.Rptr. 679.) Upon subrogation, "the insurer succeeds to its insured's rights against the third party in the amount the insurer paid." (Hodge, *788 supra, at p. 548, 30 Cal.Rptr.3d 303; Low v. Golden Eagle Ins. Co. (2002) 101 Cal. App.4th 1354, 1361, 125 Cal.Rptr.2d 155.) Generally, to protect its subrogation right, an insurer may seek intervention in the insured's lawsuit against the legally responsible party or may wait to seek the funds from its insured. (Hodge, supra, at p. 550, 30 Cal.Rptr.3d 303; Plut v. Fireman's Fund Ins. Co. (2000) 85 Cal.App.4th 98, 104, 102 Cal.Rptr.2d 36 (Plut).)
The purpose of subrogation is to prevent the insured from obtaining a double recovery (and thus being unjustly enriched) and to place the responsibility for paying the loss on the party who caused ' the loss. (Helfend v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d 1, 11, fn. 17, 84 Cal.Rptr. 173, 465 P.2d 61; see generally Parker, The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation (2005) 70 Mo. L.Rev. 723, 725-726; Rinaldi, Apportionment of Recovery Between Insured and Insurer in a Subrogation Case (1994) 29 Tort & Ins. L.J. 803, 803; Flower, Toward Correcting the Misapplication of Subrogation Doctrine in California Healthcare (2004) 77 S.Cal. L.Rev. 1039, 1043; Baron, Subrogation: A Pandora's Box Awaiting Closure (1996) 41 S.D. L.Rev. 237.) These purposes are consistent with the corrective and compensatory goals of the tort system.
The insurer's subrogation right is similar to its right to reimbursement from its own insured, and many courts refer to the two concepts under the umbrella rubric of "subrogation." (See Progressive West Ins. Co. v. Superior Court (2005) 135 Cal.App.4th 263, 273, 37 Cal. Rptr.3d 434 (Progressive West); see 16 Couch on Insurance, supra, § 222:2.) But unlike true subrogation, the insurer's reimbursement right is contingent on an actual recovery by the insured from a third party. For certain types of claims, an insurer has no subrogation rights directly against a third party, and must seek recovery only by reimbursement. In California, a claim for personal injuries is not subject to subrogation because this claim cannot be assigned.[4] (Fifield Manor v. Finston (1960) 54 Cal.2d 632, 637-643, 7 Cal.Rptr. 377, 354 P.2d 1073; Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal.App.3d at p. 465, 129 Cal.Rptr. 271; Block v. Cal. Physicians' Service (1966) 244 Cal.App.2d 266, 270, 53 Cal.Rptr. 51.) However, California courts hold that an insurer may obtain reimbursement of proceeds paid for personal injuries by enforcing policy provisions entitling the insurer to reimbursement from its insured. (Lee, supra, at pp. 465-466, 129 Cal.Rptr. 271.) It is undisputed the insurance policy at issue here contained such a reimbursement provision.

B. The Made-Whole Rule

The made-whole rule is a common law exception to an insurer's subrogation right. (Barnes v. Independent Auto. Dealers of California (9th Cir.1995) 64 F.3d 1389, 1394; see generally 16 Couch on Insurance, supra, § 223:133-223:163.) As applied in California, the rule generally precludes an insurer from recovering any third party funds unless and until the insured has been made whole for the loss. (Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal.Rptr.3d 434; Plut, supra, 85 Cal.App.4th at p. 104, 102 Cal.Rptr.2d 36; Sapiano, supra, 28 Cal.App.4th at p. 536, 33 Cal.Rptr.2d 659; Chase v. National Indemnity Co. (1954) 129 Cal.App.2d 853, *789 861, 278 P.2d 68.) The applicability of the doctrine generally depends on whether the insured has been completely compensated for all the elements of damages, not merely those for which the insurer has indemnified the insured.[5] (Ibid.) California courts have historically applied the made-whole rule in property loss claims. (See, e.g., Finnell v. Goodman & Co. Bank (1909) 156 Cal. 18, 24, 103 P. 483; Sapiano, supra, 28 Cal.App.4th at pp. 536-538, 33 Cal.Rptr.2d 659; Chase, supra, 129 Cal. App.2d at p. 861, 278 P.2d 68.) However, one court recently held for the first time that the doctrine applies in a personal injury (reimbursement) context under nofault med-pay insurance coverage. (Progressive West, supra, 135 Cal.App.4th 263, 37 Cal.Rptr.3d 434.) The Progressive West court was not asked to decide, and did not discuss, the specific issue raised here concerning the proper calculation of an insured's total recovery for purposes of this rule.[6]
Although courts in this state have not engaged in extended discussions of the rationale underlying the made-whole rule, commentators and courts in other jurisdictions have identified several reasons for the rule. First, where there has not been a complete recovery by the insured, there is no double recovery and therefore there is no justification for providing insurers with a subrogation right, which arguably provides a windfall to an insurer. (See Hare v. State (Miss.1999) 733 So.2d 277, 284; Humana Health Plans v. Lawton (Fla.App.1996) 675 So.2d 1382, 1384; Baron, supra, 41 S.D. L.Rev. at p. 249; Flower, supra, 77 So.Cal. L.Rev. at p. 1048.) The made-whole exception is additionally founded on the concept that as between the insurer and insured, it is fair to place the burden for any nonrecovery of damages on the insurer who has been paid to bear the loss and who is better able to bear the loss. (Bush v. Richardson (1997) 199 W.Va. 374, 484 S.E.2d 490, 494; Waukesha County v. Johnson (1982) 107 Wis.2d 155, 320 N.W.2d 1, 3; Garrity v. Rural Mut. Ins. Co. (1977) 77 Wis.2d 537, 253 N.W.2d 512, 514; 16 Couch on Insurance, supra, § 223.136.) The rule is also viewed as a principle of priority: where the wrongdoer has a fixed amount of assets, it is fair that the insured has the priority of rights to collect the full amount of compensation before the insurer may seek to collect from the wrongdoer. (See Schonau v. GEICO General Ins. Co. (Fla. App.2005) 903 So.2d 285, 287; Garrity, supra, 253 N.W.2d at p. 514.)
Courts in many jurisdictions, including California, hold that parties may avoid the made-whole exception by contract. (See 16 Couch on Insurance, supra, § 223:147.) In California, the contractual language must be clear and specific that the parties intend to permit the insurer to obtain reimbursement even if the insured has not been made whole. (Progressive West, supra, 135 Cal.App.4th at pp. 274-275, 37 Cal.Rptr.3d 434; Sapiano, supra, 28 Cal.App.4th at p. 538, 33 Cal.Rptr.2d 659; see Samura v. Kaiser Foundation Health Plan, Inc. (1993) 17 Cal.App.4th 1284, 1289, 22 Cal.Rptr.2d 20.) Allstate does not claim the reimbursement provision in Delanzo's insurance contract is sufficiently clear and specific to render the made-whole rule inapplicable in this case.
*790 Additionally, California courts have recognized that the made-whole exception does not apply if the insurer participated in prosecuting the claim against the third party. (Travelers Indem. Co. v. Ingebretsen, supra, 38 Cal.App.3d at p. 866, 113 Cal.Rptr. 679; see Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal.Rptr.3d 434.) There is no claim in this case that Allstate participated with Delanzo in the lawsuit against the third party tortfeasor.
Finally, it is important to note a separate and independent limitation (alluded to earlier) on the subrogation/reimbursement right, which provides that an insurer's reimbursement from its insured is subject to the insurer bearing a pro rata portion of the insured's attorney fees and costs incurred to obtain the recovery from the third party. (Progressive West, supra, 135 Cal.App.4th at pp. 275-276, 37 Cal. Rptr.3d 434; Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal.App.3d at p. 467, 129 Cal.Rptr. 271; Hartford Accident & Indemnity Co. v. Gropman (1984) 209 Cal.Rptr. 468, 163 Cal.App.3d Supp. 33, 38-40.) This rule is based on the common-fund doctrine, which is founded on the principle of fairness to the successful litigant who achieves a benefit for others who should equitably share in the costs of that recovery. (Lee, supra, 57 Cal.App.3d at pp. 467-468, 129 Cal.Rptr. 271.) Under this rule, which is well accepted in California, an insurer seeking reimbursement from its insured must bear a portion of the attorney fees and costs incurred by the insured reflecting the proportionate amount of the total attorney fees and costs to the total amount recovered from the third party. (Ibid.) However, contrary to Allstate's assertions, this rule is not dispositive on the legal issue before us be-cause the made-whole exception and the common-fund doctrine are not mutually exclusive. (See Progressive West, supra, 135 Cal.App.4th at pp. 272-276, 37 Cal. Rptr.3d 434.) The made-whole exception applies to preclude reimbursement only where the policyholder was not made whole and where the insurer did not participate in the recovery efforts. Where, however, an insured was made whole, the common-fund doctrine operates to reduce the insurer's recovery by requiring the insurer to bear a portion of the expenses for obtaining the recovery for the covered losses.

C. Treatment of Fees and Costs in Made-Whole Doctrine

The specific issue presented here regarding the proper calculation of the insured's recovery under the made-whole rule is one of first impression by the courts in this state. One California court applied the made-whole doctrine in a property insurance case and mentioned the issue of whether attorney fees and costs are deducted from the insured's recovery for purposes of this rule, but the court's ultimate determination on the issue was unclear. (Plut, supra, 85 Cal.App.4th at pp. 104-111,102 Cal.Rptr.2d 36.)
In Plut, the insured homeowners settled their property loss claims with the third party tortfeasors, but this settlement was less than the homeowners' claimed property losses. (Plut, supra, 85 Cal.App.4th at pp. 102-103, 102 Cal.Rptr.2d 36.) In a later lawsuit against their property insurer seeking compensation for the same property losses, the jury awarded the homeowners an amount that fully compensated them for their total property losses. (Id. at pp. 105-106, 102 Cal.Rptr.2d 36.) The legal issue in Plut was whether the insurer was entitled to offset from this jury award the amounts paid by the third parties for the same losses. The appellate court found an offset was appropriate because *791 the jury award against the insurer reflected the total amount of the homeowners' damages, and therefore the plaintiffs were made whole by this award. (Id at p. 106,102 Cal.Rptr.2d 36.)
In explaining its conclusion, the Plut court discussed the made-whole rule and stated that: "[T]he insured need not account to the nonparticipating insurer `for more than the surplus remaining in his hands, after satisfying his loss in full and his reasonable expenses incurred in the recovery.' (16 Couch on Insurance [2d ed. (1983) ] § 61:47, p. 130.) Thus, when an insurer elects not to participate in the insured's action against a tortfeasor, the insurer is entitled to subrogation only after the insured has recouped his loss and some or all of his litigation expenses incurred in the action against the tortfeasor." (Plut, supra, 85 Cal.App.4th at. p. 105, 102 Cal.Rptr.2d 36, italics in original.)
Although the Plut court appeared to address the attorney fees issue under the made-whole doctrine, a closer look at the entire passage creates doubt as to whether the court intended to reach and decide the issue. First, the court's quotation from the second edition of Couch on Insurance (a now superseded edition) was imprecise because within that same section, the treatise states the made-whole/pro-rata rules in the alternative: "Where the insured prosecutes the suit against the tortfeasor, thereby incurring legal expenses and court costs, the insured is generally entitled to recover such expenses prior to any recovery going to the insurer, or the insurer must at least pay its proportionate share of the expenses." (16 Couch on Insurance (2d ed.1983) § 61:47, p. 131, italics added.) The Plut court itself also stated the rules in the alternative, and in support of this proposition, the court cited several authorities discussing the common-fund rule. (Plut, supra, 85 Cal.App.4th at p. 105, 102 Cal.Rptr.2d 36; see, e.g., Texas Farmers Ins. Co. v. Seals (Tex.App.1997) 948 S.W.2d 532, 533-534; Motor Club Ins. Assn. v. Bartunek (1995) 3 Neb.App. 292, 526 N.W.2d 238, 240-241; Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal. App.3d 458, 129 Cal.Rptr. 271.) Further, in applying the made-whole rule, the Plut court deducted the insured's litigation expenses from the settlement received from the third parties in determining the offset, but did not deduct the litigation expenses incurred to recover damages against the insurer in identifying the total "made whole" amount. (Plut, supra, at p. 105, 102 Cal.Rptr.2d 36.)
Accordingly, although the Plut decision contains language that could be construed as endorsing an interpretation of the made-whole rule to require the deduction of attorney fees and costs from the total amount recovered, the court relied on authorities that pertained to the common-fund doctrine and/or that did not definitively address the made-whole issue, and the court did not apply the rule consistently to the facts before it. Further, the issue arose in the context of property insurance.
Unlike California courts, courts in other states have expressly considered the made-whole/attorney fee issue before us, but have reached inconsistent conclusions. (See generally 16 Couch on Insurance, supra, § 223:162.) In several jurisdictions adopting the made-whole rule, the courts have stated or assumed that attorney fees and costs should be deducted from the total recovery in determining whether the insured was made whole. (See Skauge v. Mountain States Tel. & Tel. Co. (1977) 172 Mont. 521, 565 P.2d 628, 632; Nationwide Mutual Insurance Co. v. Butler (Pa. 1983) 28 Pa. D. & C.3d 627, 629; Central National Insurance Group v. Hotte (Fla.App. 1975) 312 So.2d 235, 237; Washtenaw Mutual *792 Fire Insurance Co. v. Budd (1919) 208 Mich. 483, 175 N.W. 231, 232; St. Paul Fire and Marine Insurance Company v. W.P. Rose Supply Company (1973) 19 N.C.App. 302, 198 S.E.2d 482, 485; Gibbs M. Smith, Inc. v. U.S. Fidelity (Utah 1997) 949 P.2d 337, 345-346.) Although the Montana courts have identified equitable grounds for this conclusion (see DeTienne Assoc. v. Farmers Union Mut. Ins. (1994) 266 Mont. 184, 879 P.2d 704, 708-709; Skauge, supra, 565 P.2d at p. 632),[7] most of the other courts have merely restated this rule without extended analysis or discussion. (See, e.g., Central National Insurance Group, supra, 312 So.2d at p. 237; Washtenaw Mutual Fire Insurance Co., supra, 175 N.W. at p. 232; St. Paul Fire and Marine Insurance Company, supra, 198 S.E.2d at p. 485; Gibbs M. Smith, Inc., supra, 949 P.2d at pp. 345-346; Nationwide Mutual Insurance Co., supra, 28 Pa. D. & C.3d at p. 629.)
Several other jurisdictions have specifically held that attorney fees and costs to obtain the third party recovery should not be deducted from the insured's total recovery for purposes of the made-whole rule calculation. (See, e.g., Peterson v. Safeco Ins. Co. (1999) 95 Wash.App. 254, 976 P.2d 632, 635-636; CNA Ins. Cos. v. Johnson Galleries (Ala.1994) 639 So.2d 1355, 1357.) The Peterson court reasoned that a rule requiring a deduction of litigation expenses for purposes of determining-whether the insured was made whole would improperly "shift the burden of [an insured's] attorney fees from the plaintiff in a personal injury action to the first party carrier." (Peterson, supra, 976 P.2d at p. 635.) The CNA Insurance court declined to deduct attorney fees from the insured's recovery in applying the made-whole rule based on its conclusion that the insured could not have recovered those fees in the underlying litigation against the third party. (CNA, supra, 639 So.2d at p. 1357.)
One federal district court recently interpreted California law to hold that attorney fees and costs should be deducted before determining whether the insured was made whole. (Chong v. State Farm Mutual Automobile Insurance Co. (S.D.Cal. 2006) 428 F.Supp.2d 1136 (Chong).) Chong, however, expressed substantial "reluctan[ce]" to decide the issue given the lack of state law authority, and suggested that "[certification of this question to the California Supreme Court would obviously be the ideal solution." (Id. at p. 1142 & fn. 2.) For the reasons explained below, we disagree with the Chong court's interpretation of California law.

III. Analysis

A. Applicable Legal Doctrines Do Not Support Delanzo's Theory in this Case

Because there is no case law in California that specifically guides our resolution of the legal issue presented, our analysis focuses on our review of the doctrinal grounds for this state's subrogation/reimbursement rules and the madewhole exception to those rules, as well as the nature and purpose of med-pay coverage. Based on this analysis, we conclude that in determining whether an insured has been made whole, the amount of the insured's total recovery should not be reduced by the attorney fees and expenses incurred by the insured to obtain the recovery from a third party tortfeasor.
*793 First, the purposes underlying the made-whole doctrineensuring the injured party receives full compensation and imposing the burden for nonrecovery of damages on the party best able to bear the lossare concepts derived from tort law. A fundamental objective of tort law is to make a plaintiff whole for damages suffered to the extent a defendant is responsible for those damages. Tort "`damages are awarded to [fully] compensate the victim for [all] injury suffered.'" (Erlich v. Menezes (1999) 21 Cal.4th 543, 550, 87 Cal.Rptr.2d 886, 981 P.2d 978 [brackets in original]; Strebel v. Brenlar Investments, Inc. (2006) 135 Cal.App.4th 740, 749, 37 Cal.Rptr.3d 699.) However, under the American rule adopted in California, a plaintiffs attorney fees are not included in determining the plaintiffs total losses, absent a statutory exception or contractual provision. (See Trope v. Katz (1995) 11 Cal.4th 274, 278, 45 Cal.Rptr.2d 241, 902 P.2d 259 ["California follows what is commonly referred to as the American rule which provides that each party to a lawsuit must ordinarily pay his own attorney fees"].) Thus, under California law, the fact that an insured does not recover his or her attorney fees in an underlying tort action does not show the insured did not receive full compensation for the loss from the third party. The made-whole rule provides that an insurer is not entitled to reimbursement until the insured has been "`fully' compensated.'" (Hodge, supra, 130 Cal.App.4th at p. 553, 30 Cal.Rptr.3d 303.) In the tort context, full compensation refers to payment for all damages suffered, and does not include attorney fees.[8] (See CNA Ins. Cos. v. Johnson Galleries, supra, 639 So.2d at p. 1357.)
We reach a similar conclusion when considering the additional rationale underlying the made-whole rule that, as between the insurer and insured, it is fair to place the burden for any nonrecovery of damages on the insurer who is better able to bear the loss. (See 16 Couch on Insurance, supra, § 223.136; Garrity v. Rural Mut. Ins. Co., supra, 253 N.W.2d at p. 514.) In this case, Delanzo admits he received a total recovery for his personal injury losses from the third party and received credit for that portion of his attorney fees and costs attributable to recovery of the covered losses from the third party (through a deduction from Allstate's reimbursement). Delanzo did not pay or bargain for, and thus could not have reasonably expected, insurance coverage that would compensate him for damages over and above his medical payments or for litigation expenses to collect these uncovered damages. However, that would be the effect of Delanzo's interpretation of the made-whole rule. If we were to conclude that Allstate should be denied any reimbursement because of Delanzo's obligation to pay attorney fees and costs to collect the uncovered losses, "we would effectively shift the burden of his attorney fees from the plaintiff in a personal injury action to the first party carrier." (Peterson v. Safeco his. Co., supra, 976 P.2d at p. 635.) This would be inconsistent with the general rule that an insurance company may be obligated to pay attorney fees to its insured only in disputes between the insured and the insurer and only under certain circumstances. (See Brandt v. Superior Court (1985) 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796; Civ.Code, § 1717.)
Likewise, when viewing the made-whole rule as a rule of priority, there is no *794 conflict between the insured and insurer with respect to attorney fees in this situation because the insured is not entitled to recover these fees directly from the tortfeasor. (See Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal.App.3d at pp. 465-466, 129 Cal.Rptr. 271.)
Finally, although the made-whole rule is an equitable concept, we reject Delanzo's suggestions that our interpretation of the scope of the doctrine should be based solely on our belief of what is "fair" or "equitable" under the circumstances. We agree with Delanzo that Allstate has more resources than the individual policyholder and thus may be better able to absorb the cost of a rule that would preclude reimbursement in med-pay insurance cases, as opposed to the burden on a policyholder to pay for his or her litigation expenses related to noncovered losses. But it is not the purpose of the made-whole rule to rewrite the parties' contract merely because an insurer has more resources than its insured or to interfere with the parties' reasonable expectations such that it would provide the insured with a benefit for which he did not pay and require the insurer to pay for a risk it did not assume.
It is well established in this state that an insurer has the right to enforce a subrogation/reimbursement contractual provision to require an insured to repay the insurer in the event of a recovery for the covered loss from a third party. It is not the purpose of the made-whole exception to eliminate this right merely because it would appear equitable to do so. Rather, the applicability of the made-whole rule depends on whether the insured has received an amount that is equivalent to all the damages to which he or she is entitled under California law. Where, as here, the insured acknowledges that he has received that full recovery, there is no valid basis for precluding an insurer from reimbursement after the insured has twice recovered for the same loss.

B. Chong's Reasoning is Unpersuasive

As noted earlier, one federal district court recently considered the identical legal issue presented here and reached an opposite conclusion. (Chong, supra, 428 F.Supp.2d 1136.) In that case, the plaintiff brought a class action against her insurer, alleging the insurer's reimbursement-claim for med-pay benefit payments was improper because the plaintiffs net recovery from a third party (after deducting attorney fees and costs) was below the amount the plaintiff needed to be made whole. (Id. at p. 1138.) In denying the insurer's motion to strike the complaint, the district court held that "absent a contractual provision to the contrary, the made-whole rule requires that a policyholder fully recover her loss and litigation expenses, including attorney fees and costs, before a nonparticipating carrier can seek reimbursement from her tort recovery." (Id. at p. 1146.)
The Chong court reasoned that deducting attorney fees from the insured's recovery would "simply more nearly put[ ] the policyholder back in the situation she would have been had her loss not occurred." (Chong, supra, 428 F.Supp.2d at p. 1145.) The court stated this result was not "unfair" to the insurer because the insured's failure to recover his or her entire loss is a risk the "`insured has paid [the insurer] to assume.'" (Id. at p. 1145, italics omitted, quoting Skauge v. Mountain States Tel. & Tel. Co., supra, 565 P.2d at p. 632.) Chong conversely found that a rule not allowing a deduction for attorney fees would be "unfair to policyholders" because it would allow insurers to "gamble with the policyholder's money" and would "encourage insurance carriers, Which generally have resources far superior to those *795 of their policyholders, to sit out their policyholders' tort claims." (Chong, supra, at p. 1145.) Chong stated that an insurance carrier could protect its reimbursement right "by simply intervening in the policyholder's tort action...." (Ibid.)
We find each of Chang's reasons to be unpersuasive, particularly in the specific context of med-pay insurance coverage. First, with respect to Chong's concern with placing the insured back in the situation he or she would have been before the loss, the made-whole rule promotes this goal by requiring that an insured recover for all of his or her losses (covered and uncovered) before an insurer may obtain reimbursement. We agree with this principle. However, under California law, the concept of full recovery for tortious conduct has never been construed to include recovery for attorney fees. Absent a contract provision or statutory exception, an insured is entitled to compensation for his or her losses from a third party, but this compensation refers to tort damages that do not include attorney fees.
Additionally, we find unsupported Chong's view that an insured pays his med-pay coverage carrier to "assume" the "risk" that the insured will recover "less than her total loss." (Chong, supra, 428 F.Supp.2d at p. 1145.) An insured who purchases med-pay coverage does not pay the insurer to cover more than the insured's reasonable medical expenses as defined in the insurance contract. As Delanzo acknowledges in his amended complaint, this coverage is limited, and is designed only "to provide an additional source of funds" for "reasonable and necessary medical expenses." Under well settled subrogation rules, an insurer is entitled to reimbursement if the insured collects a full recovery for the same damages against the wrongdoer. Under the common-fund rule, the insurer who seeks reimbursement for the duplicate recovery is required to bear the pro rata portion of the expenses incurred by its insured to recover for the covered losses. (See Progressive West, supra, 135 Cal.App.4th at pp. 275-276, 37 Cal.Rptr.3d 434; Lee v. State Farm Mut. Auto. Ins. Co., supra, 57 Cal.App.3d at pp. 467-69, 129 Cal.Rptr. 271.) The insurer's burden to pay for these costs flows directly from its obligation to pay covered losses. (Ibid.) However, an insurer that provides med-pay coverage' does not assume the risk to bear the cost of uncovered losses or the expenses to recover those losses (such as pain and suffering, property damage, or lost wages). Thus, with respect to the costs to recover for these losses, there is no equitable basis for concluding that "`the loss should be borne by the insurer for that is the risk the insured has paid it to assume.'" (Chong, supra, 428 F.Supp.2d at p. 1145, italics omitted.)
We likewise find unsupported Chong's assertion that the insurer's interpretation of the made-whole rule is "unfair" to policyholders because it would allow insurers to "engage in a risk free gamble with the policyholder's money." (Chong, supra, 428 F.Supp.2d at p. 1145.) Before seeking reimbursement, the insurer must have paid all policy benefits to the insured; thus, the insurer is not in a position to "gamble" with the insured's money. Instead, it is the insured (who has already received all covered benefits) who must make the decision whether to bring a personal injury action to recover for additional noncovered losses from a third party. While the decision to proceed with the litigation may indirectly benefit the insurer, the insurer must pay its full share of attorney fees before it is entitled to the reimbursement. Further, the requirement that the insured bear the legal expenses related to collecting for uninsured losses is not unfair because the insured has not paid *796 a premium for coverage of these legal expenses. The made-whole rule is an exception to subrogation applicable in circumstances where there is no potential the insured will obtain a double recovery for the same injuries. An insured who received med-pay benefits from the insurer and is successful in obtaining damages for these same medical expenses from a third party (and for all other claimed damages) does receive double recovery for the medical expenses.
Chong nonetheless expressed concern that if attorney fees and costs are not included in the calculation, an insurer would be encouraged to "sit out" its insured's tort action because the insurer could obtain full reimbursement if the policyholder fully recovers for his losses, but the insurer would not be required to bear any costs if the policyholder is unsuccessful. (Chong, supra, 428 F.Supp.2d at p. 1145.) This concern improperly assumes that an insurer in the med-pay coverage context could or should be encouraged to intervene or otherwise participate in the third party action, or that the insurer acts unfairly by relying on its insured to initiate and pursue the third party litigation.
Because a personal injury action is not assignable, an insurer has no direct rights as against a third party, and therefore would not have standing to bring an action against the third party for payments made under the insurance policy. Even assuming intervention is an available option, it is unrealistic to think this would occur or that plaintiff would welcome this. As Delanzo's counsel acknowledged at oral argument, he would "most likely" object to an insurer's efforts to intervene, reflecting a candid assessment that interjecting insurance payments into a personal injury action is not a desirable development from a plaintiffs view. Also, given the no-fault nature of the coverage, the insurance company would not be expected to perform any investigation to determine which party caused the accident, and therefore it would not have a factual basis to determine the likelihood of its insured succeeding against the third party and thus whether an intervention would be justified. The purpose of this no-fault coverage is to ensure quick payment to the insured and to avoid litigation over the covered losses. Additionally, given the low monetary limits of med-pay coverage, the legal fees would be expected to be substantially greater than any possible recovery by the insurer, and therefore an insurer would have no financial incentive to assist the insured even if we were to agree with Chong's construction of the made-whole rule.
Because the purpose of the third party action is to seek damages for uncovered losses (since the insured has already recovered compensation for the covered losses), there is no reason for the insurer to support or encourage that litigation. If the insured decides not to bring the litigation, the insurer has no reimbursement rights and thus the insured would not be penalized. In contrast, an insured who believes that a third party is at fault and who suffered damages over and above the medical payments, would have substantial incentive to bring an action to recover these amounts, even if the insured would be required to ultimately repay the insurer if the insured recovered twice for the same injuries. Med-pay insurance does not include coverage to fund this third-party litigation. Moreover, an insured's risks are greatly reduced because of the wide availability of contingency fee arrangements for attorney services for personal injury claims.[9]

*797 DISPOSITION
Petition for writ of mandate granted. This court issues a writ of mandate directing the superior court to vacate its order overruling Allstate's demurrer and enter a new order sustaining the demurrer. The parties to bear their own costs in the writ proceeding. The stay issued on November 3,2006 is vacated.
I concur: Mcdonald, J.
NARES, J., dissenting.
I respectfully dissent. I agree with the strong majority of jurisdictions in the United States to have considered the issue that attorney fees and costs must be deducted from the total recovery in determining if the insured is made whole. (Skauge v. Mountain States Tel. & Tel. Co. (1977) 172 Mont. 521, 565 P.2d 628, 632; Nationwide Mutual Insurance Co. v. Butler (Pa.Com.Pl.1983) 28 Pa.D. & C.3d 627, 629; Central Nat. Ins. Group v. Hotte Fla.App.1975) 312 So.2d 235, 237; Washtenaw Mut. Fire Ins. Co. v. Budd (1919) 208 Mich. 483, 175 N.W. 231, 232; St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Company (1973) 19 N.C.App. 302, 198 S.E.2d 482, 485; Gibbs M. Smith v. U.S. Fidelity & Guar. Co. (Utah 1997) 949 P.2d 337, 345-346.)
I further agree with the federal district court's holding in Chong v. State Farm Mut. Auto. Ins. Co. (S.D.Cal.2006) 428 F.Supp.2d 1136 (Chong).
A review of Chong is instructive. In Chong, the plaintiff-insured had purchased an automobile policy with $5,000 in medical payments coverage. The insurer paid the plaintiff the maximum $5,000 towards plaintiffs medical bills. The plaintiff then filed a personal injury claim against the third party tortfeasor, ultimately recovering a settlement of $65,000. However, in obtaining that settlement, plaintiff incurred $28,000 in attorney fees. The insurer, while aware of the third party lawsuit, chose not to participate in the lawsuit and sought reimbursement under the terms of the policy. (Chong, supra, 428 F.Supp.2d at p. 1138.) Subsequently, the insured filed a class action suit, alleging that State Farm's application of the reimbursement provisions of her automobile policy violated California's common law make-whole rule because her net recovery, after deducting her attorney fees and costs, fell far below the amount required to make her whole. The insurer moved to dismiss the class action complaint for failure to state a claim, or, in the alternative, to strike the insured's class allegations. (Ibid.) The district court refused to dismiss the case, siding with the insured on the issue.
In doing so, the Chong court first noted that there was no California authority on point. (Chong, supra, 428 F.Supp.2d at p. 1143.) Relying upon well reasoned holdings of out-of-state jurisdictions (see citations, ante) which "have directly addressed the effect of attorney fees and costs on the make whole analysis" (id at pp. 1143-1144), the court concluded that "the California Supreme Court would hold that, absent a contractual provision to the contrary, the make whole rule requires that a policyholder fully recover her loss and litigation expenses, including attorney fees and costs, before a nonparticipating *798 carrier can seek reimbursement from her tort recovery." (Id. at p. 1146.)
In so holding, the court noted that "[t]he California cases discussing the make whole rule consistently refer to the nonparticipating carrier's reimbursement right as being limited to the surplus resulting from the policyholder's receipt of both insurance benefits and tort damages. [Citations.] However, when a policyholder's attorney fees and costs exceed the amount the carrier paid in policy benefits, there is no surplus. Thus, precluding the carrier from seeking reimbursement where the policyholder's attorney fees and costs exceed the carrier's payments does not provide the policyholder with a windfall. [Citation.] Instead, it simply more nearly puts the policyholder back in the situation [in which] she would have been had her loss not occurred." (Chong, supra, 428 F.Supp.2d at pp. 1144-1145, fn. omitted.)
The district court then cited the policy considerations that supported its conclusion, and that I find persuasive: "If either the policyholder or the carrier must to some extent go unpaid because the policyholder has recovered less than her total loss, 'the loss should be borne by the insurer for that is the risk the insured has paid it to assume.' [Citation, original italics.] In addition, it is important to note that this rule applies in California only to the carrier that elects to sit on the sidelines or fails to contract around it in its policy. A carrier that wishes to avoid this result may do so by simply intervening in the policyholder's tort action or drafting an explicit contractual provision partially or wholly abrogating the make whole rule. [Citation.] Since insurance policies are generally adhesion contracts, drafting such a provision should not be a difficult task for any carrier interested in doing so." (Chong, supra, 428 F.Supp.2d at p. 1145.)
The court then explained why a contrary rule would be unfair to policy holders: "Under that rule, a carrier that elected not to participate in its policyholder's tort action would be in effect allowed to engage in a risk free gamble with the policyholder's money. If the policyholder loses her tort action, the carrier has lost nothing because the carrier has not yet incurred any attorney fees and costs. If the policyholder wins, the carrier, knowing the outcome, may then offer to pay its pro rata portion of attorney fees and costs in exchange for reimbursement. Plainly, such a rule would not be in keeping with the equitable principles underlying the make whole rule and the subrogation doctrine. Moreover, such a rule would encourage insurance carriers, which generally have resources far superior to, those of their policyholders, to sit out their policyholders' tort claims. The doctrine of subrogation is founded in part on the notion that the party who is responsible for a loss should pay. [Citation.] Surely a default rule that encourages insurance carriers with their superior resources to sit on the sidelines while their policyholders, with inferior resources, pursue the tortfeasors responsible for their injuries alone would not serve that purpose." (Chong, supra, 428 F.Supp.2d at pp. 1145-1146, fn. omitted.)
Nor, as the majority contends, does the "American rule," which provides that, absent a statute to the contrary, a contractual provision, or equitable principles, each party to a lawsuit must pay their own attorney fees and costs, have relevance to the issue presented on this appeal. That common law rule merely states that, as a matter of policy, each side in litigation is responsible for the attorney fees and costs it incurs. It does not purport to state a rule that, vis-à-vis a third party such as insurance company, a litigant is "made whole" even after deducting those fees. The fact that generally each side in litigation *799 in America must bear their own attorney fees does not inform our decision as to the "made whole" doctrine, and the equitable principles upon which it based.
Moreover, Plut v. Fireman's Fund Ins. Co. (2000) 85 Cal.App.4th 98, 102 Cal. Rptr.2d 36 (Plut) does directly support the insured's position in this case. That case held that when an insurer elects not to participate in the insured's action against a tortfeasor, the insured "need not account to the nonparticipating insurer `for more than the surplus remaining in his hands, after satisfying his loss in full and his reasonable expenses incurred in the recovery.'" (Id. at p. 105, 102 Cal.Rptr.2d 36.) The court later stated, "the insurer is entitled to subrogation only after the insured has recouped his loss and some or all of his litigation expenses incurred in the action against the tortfeasor." (Ibid.) The majority's attempt to explain away this holding ignores the clear language of the opinion, and their attempt to distinguish that case as involving "property insurance" is unsupported by any authority or analysis. Further, in support of its holding, the Plut court relied upon the treatise Couch on Insurance, which, in its current edition, cites the holding of Chong with approval. (16 Couch on Insurance (3d ed.2006) § 223:134.) Progressive West Ins. Co. v. Yolo County Superior Court (2005) 135 Cal.App.4th 263, 273, 37 Cal.Rptr.3d 434 (Progressive West) also quoted Plut's holding with approval.
Further, the majority's analysis overlooks the fact that California cases discussing the make whole rule consistently state that a nonparticipating insurer's reimbursement right is limited to the surplus resulting from the policy holder's receipt of both insurance benefits and tort damages. (Plut, supra, 85 Cal.App.4th at p. 105, 102 Cal.Rptr.2d 36; Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal. Rptr.3d 434; Hodge v. Kirkpatrick Development, Inc. (2005) 130 Cal.App.4th 540, 553, 30 Cal.Rptr.3d 303.) "[W]hen a policyholder's attorney fees and costs exceed the amount the earner paid in policy benefits, there is no surplus" (Chong, supra, 428 F.Supp.2d at p. 1144-1145, fn. omitted), and thus no windfall to the insured.
The majority also characterizes a decision in favor of the insured as resulting in him receiving insurance for his attorney fees and costs for which he never bargained or paid. This conclusion is unpersuasive. He contracted for the insurer to cover his losses, which the insurer is not entitled to recoup unless the insured is made whole. Thus, accepting the insured's position does not, as the majority contends "rewrite the parties' contract." Rather, if the insurer does not want the make whole rule to apply, it has the ability to put a clause in the insurance contract to that effect.
In reaching its conclusion that the petition for writ of mandate should be granted, the majority opinion directly contradicts established California law when it holds, at least implicitly, that an insurer cannot intervene in the insured's action against the third party tortfeasor. (See Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal.Rptr.3d 434; Croskey et al, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶¶ 9:111.20 to 9:111.22b, pp. 9-37 to 9-38 (rev.# 1, 2006).) The majority bases this conclusion on the fact that persona] injury claims are not assignable and therefore the insurer may not bring an action directly against the third party tortfeasor. However, it is precisely because of this fact that insurers are permitted to intervene in the insured's action against the third party tortfeasor. (See Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal.Rptr.3d 434; Croskey et al, Cal. Practice Guide: Insurance Litigation, *800 supra, ¶¶ 9:111.20 to 9:111.22b, pp. 9-37 to 9-38 (rev.# 1, 2006).)
The majority cites a comment made by petitioners' counsel at oral argument that as a matter of strategy he "most likely" would object to an insurance company intervening in a third party action. However, he also stated that California law provides that such intervention is permissible, and that there are other ways that an insurer could participate in the action.
The majority asserts that there is no incentive for insurers to intervene in the insured's action against a third party tortfeasor in the med-pay coverage context. As the petitioners' counsel noted at oral argument, the incentive to do so is that, if it does not, "the insurer is entitled to subrogation only after the insured has recouped his loss and some or all of his litigation expenses incurred in the action against the tortfeasor." (Progressive West, supra, 135 Cal.App.4th at p. 273, 37 Cal.Rptr.3d 434; Croskey et al., Cal. Practice Guide: Insurance Litigation, supra, ¶ 9:111.22c, p. 9-38 (rev.# 1, 2006).)
I would deny the petition.
NOTES
[1] Delanzo's allegations assume there was no contributory negligence; Allstate does not challenge this assumption for purposes of the appeal.
[2] Four other insurers filed writ petitions in this court challenging similar orders in other cases. We issued orders to show cause on each of these petitions. Simultaneously with filing this decision, we have filed unpublished decisions in each of these cases reaching similar conclusions. The parties have informed us there are numerous other complaints in the superior court asserting similar claims against other med-pay insurers.
[3] One commentator has noted that the proper allocation of third party payments "present[s] one of the most difficult questions in the field of insurer subrogation...." (16 Couch on Insurance (3d ed.2006) § 223:133.)
[4] This rule is subject to statutory modification. For example, the Legislature has specifically provided for an insurer's subrogation rights with respect to uninsured motorist coverage. (Ins.Code, § 11580.2, subd. (g).)
[5] Some jurisdictions have narrowly construed the made-whole exception as referring only to an insured being fully compensated for the covered losses. (See, e.g., Ludwig v. Farm Bureau Mut. Ins. Co. (Iowa 1986) 393 N.W.2d 143, 145-147.)
[6] Because Allstate does not challenge Progressive West's holding, we assume for purposes of this case that Progressive West was correctly decided under California law.
[7] The holding in the Montana courts appears to stem from the state's general disfavor of insurer subrogation, which extends to a judicial rule that any subrogation of med-pay benefits is void as against public policy. (See Youngblood v. American States Ins. Co. (1993) 262 Mont. 391, 866 P.2d 203, 204.)
[8] To the extent a plaintiff in a particular case can recover attorney fees from the third party tortfeasor (e.g., because of an applicable statutory exception) but failed to do so, there would arguably be a basis to include attorney fees in the calculation. However, that scenario is not part of the facts alleged in Delanzo's complaint.
[9] In reaching our conclusions, we do not consider Allstate's argument that including attorney fees in the made-whole calculation is improper because it will necessarily result in higher premium rates for med-pay coverage. Because we do no not reach Allstate's argument on this point, we deny Delanzo's motion that we take judicial notice of Allstate's administrative filings, which Delanzo says show that reimbursement recoveries are not a factor in Allstate's policy rate determinations.